# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CLIFTON DAVID SIMS       \*
c/o Mark S. Zaid, P.C.       \*
1250 Connecticut Avenue, N.W.       \*
Suite 700       \*
Washington, D.C. 20036       \*
      \*
        Plaintiff,       \*
        v.       \*
      \*
DONALD J. TRUMP       \*
in his official capacity,       \*     Civil Action 19-_____
The White House       \*
1600 Pennsylvania Avenue, N.W.       \*
Washington, D.C. 20500       \*
      \*
      and       \*
      \*
UNITED STATES OF AMERICA       \*
950 Pennsylvania Avenue, N.W.       \*
Washington, D.C. 20530       \*
      \*
        Defendants.       \*

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>COMPLAINT</u>

The Plaintiff Clifton David Sims brings this action against Defendants Donald J. Trump, in his official capacity as President, and the United States of America for injunctive and declaratory relief pursuant to the Federal Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 - 2202, and the First Amendment to the Constitution of the United States.

The Defendants seek to unlawfully penalize and impose a prior restraint upon Mr. Sims with respect to the publication and discussion of his book, <u>Team of Vipers: My 500 Extraordinary Days in the Trump White House</u> (St. Martin's Press, 2019)("Team of Vipers") and any information he learned as a result of serving as a federal employee. The U.S. Government is intentionally and unconstitutionally engaging in a subterfuge effort to use a private entity,

Donald J. Trump for President, Inc., to do its bidding to silence Mr. Sims when it is really the intense powers of the Presidency coming down upon a sole individual.

This action seeks to permanently enjoin the Defendants from silencing Mr. Sims with respect to any information he learned during his tenure as a federal employee, and any legal rights and protections therefrom that may necessarily flow.

## JURISDICTION

1.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Mr. Sims' claims arise under the First Amendment to the United States Constitution and the DJA, 28 U.S.C. § 2201-2202.

## VENUE

2.   Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1) because Mr. Sims resides in the District of Columbia. In addition, venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the District of Columbia.

## PARTIES

3.   Plaintiff Clifton David Sims ("Plaintiff" or "Mr. Sims") is a resident of the District of Columbia, and is a citizen of the United States. Mr. Sims previously worked for Donald J. Trump for President, Inc. ("Trump Campaign") as a Communications Advisor. From January 20, 2017, up until May 2018, Mr. Sims was a federal employee serving as a Special Assistant to the President. To the best of his understanding and recollection, Mr. Sims was never granted a security clearance by the U.S. Government and is not subject to any pre-publication review requirement.

4.    The Defendant Donald J. Trump ("President Trump") is currently the President of the United States. President Trump is being sued in his official capacity as President of the United States.

5.    The Defendant United States of America is within the jurisdiction of this Court. It is responsible for and is under the direction of President Trump.

## FACTS

6.    This action seeks to protect the unequivocal and distinct constitutional rights of a former federal employee to publish unclassified information, notwithstanding the existence of or attempt by President Trump or the United States of America (collectively referred to as "USGOVT" or "Defendants") to enforce any non-disclosure agreements ("NDA").

**First Amendment Case Law**

7.    A private entity performs a "public function" and steps into the shoes of a state actor when it seeks to exercise powers that have traditionally been the exclusive prerogative of the USGOVT. See Jackson v. Metropolitan Edison Co., 419 U.S. 345, 352 (1974). Imposing a prior restraint upon the First Amendment rights of former federal employees regarding information derived from their federal service has traditionally been the exclusive prerogative of the USGOVT, and something it has addressed through the imposition of NDAs for certain individuals who are processed for and granted access to U.S. Government classified information. See Snepp v. United States, 444 U.S. 507, 510 n.3 (1980).

8.    It has been an unquestioned cornerstone of First Amendment case law for decades, however, that public employees do not surrender their constitutional rights merely by virtue of their employment. Pickering v. Bd. of Education, 391 U.S. 563, 568 (1968). Although that First

Amendment right for former federal employees only applies to unclassified information, see Snepp, 444 U.S. at 513, the courts have nonetheless been clear in stating those First Amendment rights to disclose unclassified information cannot be censored by the USGOVT, contractually or otherwise. See McGehee v. Casey, 718 F.2d 1137, 1141 (D.C. Cir. 1983); United States v. Marchetti, 466 F.2d 1309, 1312 (4th Cir. 1972).

9.   This case law has formed the foundation for procedures addressing prepublication review of former federal employees' written manuscripts that remain in force to this day. Those procedures, however, only apply to former federal employees who signed specific documentation as part of their processing for access to classified information and who were bound to submit writings to the USGOVT in advance for classification review prior to publication.

10. This present action is necessary because the USGOVT has sought to circumvent these well-established set of rules and procedures by having a private surrogate serve as an illegitimate cutout and step into the shoes of the USGOVT. The USGOVT is seeking to impose civil liability against Mr. Sims through application of NDAs that apply to information Mr. Sims learned *solely* during his federal service. That the Trump Campaign is acting at the President's behest is not surprising given President Trump's personal comments throughout the presidential campaign indicating his disdain of so-called "tell-all books" written by former Federal officials and his desire to apply NDAs to those who serve in the White House:

> I think they should. You know, when somebody — and I see it all the time. . . .
> And I don't know, there could be some kind of a law that you can't do this. But
> when people are chosen by a man to go into government at high levels and then
> they leave government and they write a book about a man and say a lot of things
> that were really guarded and personal, I don't like that. I mean, I'll be honest. And
> people would say, oh, that's terrible, you're taking away his right to free speech.
> Well, he's going in. . . .  I would say . . . I do have nondisclosure deals.

*https://www.washingtonpost.com/news/post-politics/wp/2016/04/02/transcript-donald-trump-interview-with-bob-woodward-and-robert-costa/?utm_term=.442d8c19b24d* (last accessed February 10, 2019).

11. In March 2018, *The Washington Post* revealed that, in the early days of the Trump Administration, senior officials – at the behest of President Trump – were instructed by the White House Counsel's Office to sign NDAs that encompassed their work in the federal government and that prohibited revealing "confidential" information. These NDAs were distinct from the NDAs traditionally signed by officials as part of their processing for security clearances and that would apply to classified information. *https://www.washingtonpost.com/opinions/trumps-non disclosure-agreements-came-with-him-to-the-white-house/2018/03/18/226f4522-29ee-11e8-b79d-f3d931db7f68_story.html?utm_term=.c9f98be90852* (last accessed February 10, 2019).

12. Mr. Sims cannot definitively recall if he signed the additional NDA separately provided by the White House Counsel's Office to senior officials concerning "confidential" information, and is currently operating upon the good faith assumption that he did do so.

**"Team of Vipers" Publication**

13. Mr. Sims was hired by the Trump Campaign in September 2016, to work as a Communications Advisor. Subsequent to his hiring, Mr. Sims signed an NDA that prohibits the disclosure of "confidential" information or the disparagement of the Trump Campaign, President Trump, or his family.

14. Upon the inauguration of President Trump on January 20, 2017, Mr. Sims became a Special Assistant to the President and a federal employee. He specifically served as the Director

of Message Strategy in the White House. Mr. Sims left the White House and federal employment in May 2018.

15. In November 2018, reports emerged that "Team of Vipers" was set to be released in January 2019. *https://www.politico.com/story/2018/11/16/trump-white-house-cliff-sims-book-996198* (last accessed February 10, 2019); *http://www.aldailynews.com/cliff-sims-team-of-vipers-book-set-for-release-january-29/* (last accessed February 10, 2019). The reports were ultimately confirmed by a press release issued by St. Martin's Press, which stated the publication date would be January 29, 2019.

16. As the publication date neared, exclusive excerpts from the book were published by different media outlets and addressed issues such as leaks by senior White House staffers, *https://www.vanityfair.com/news/2019/ 01/trump-aide-recalls-conways-leaking-tactics-in-the-west-wing-vipers-nest* (last accessed February 10, 2019), internal bureaucratic disputes between President Trump and then-Chief of Staff John Kelly regarding foreign policy, *https://www.breit bart.com/politics/2019/01/24/exclusive-excerpts-from-team-of-vipers-john-kelly-overheard-undermining-president-trump-on-syria/* (last accessed February 10, 2019), and heated arguments between President Trump and then-Speaker of the House, Congressman Paul Ryan. *https://www.washingtonpost.com/politics/absolutely-out-of-control-cliff-simss-book-depicts-life-in-trumps-white-house/2019/01/ 21/883d2412-1d92-11e9-9145-3f74070bbdb9_story.html ?utm_term=.d2dfe6290abb* (last accessed February 10, 2019). Each of these excerpts dealt with matters learned during Mr. Sims' service as a federal employee.

17. Notwithstanding having full knowledge of the impending publication, at no time prior to the public release of "Team of Vipers" on January 29, 2019, did the USGOVT take any action against Mr. Sims or seek to prevent the book's publication.

**Arbitration Demand**

18. Within hours of the official release of "Team of Vipers", President Trump exercised the

full authority of the Presidency when he stated on Twitter on January 29, 2019:

> A low level staffer that I hardly knew named Cliff Sims wrote yet another boring
> book based on made up stories and fiction. He pretended to be an insider when in
> fact he was nothing more than a gofer. [sic] He signed a non-disclosure
> agreement. He is a mess!

*https://twitter.com/realDonaldTrump/status/1090244651578204160?s=20* (last accessed

February 10, 2019).

19. The White House and Department of Justice have previously made clear their view that

tweets by President Trump are "official statements" from the Office of the President.

*https://www.cnn.com/2017/06/06/politics/trump-tweets-official-statements/index.html*

(last accessed February 10, 2019); *https://www.washingtontimes.com/news/2017/nov/14/doj-*

*donald-trump-tweets-are-official-statements-of/* (last accessed February 10, 2019).

20. Not even twenty minutes after President Trump's tweet, and not as a matter of

coincidence, Michael Glassner, the Trump Campaign Chief Operating Officer, tweeted: "The

Trump campaign is preparing to file suit against Cliff Sims for violating our NDA."

*https://twitter.com/michaelglassner/status/1090249001746747392* (last accessed February 10,

2019).

21. On January 31, 2019, the Trump Campaign publicly revealed that it had filed an

arbitration claim against Mr. Sims for purported breaches of an NDA. The Demand for

Arbitration seeks monetary damages, as well as the return of all information and materials

encompassing Mr. Sims' tenure in the White House and to enjoin Mr. Sims from making

"disparaging statements" or commenting further regarding "confidential" information derived

from his time in the White House. See *https://www.bloomberg.com/news/articles/2019-01-31/trump-campaign-says-former-aide-sims-violated-nda-with-new-book* (last accessed February 10, 2019); *https://www.washingtonexaminer.com/washington-secrets/war-trump-campaign-sues-ex-aide-author-of-tell-all-team-of-vipers* (last accessed February 10, 2019).

22. The Arbitration proceeding specifically <u>and solely</u> refers to substantive matters that took place while Mr. Sims was a federal employee serving in the White House. *https://www.washingtonexaminer.com/washington-secrets/war-trump-campaign-sues-ex-aide-author-of-tell-all-team-of-vipers* (last accessed February 10, 2019). Notwithstanding that fact, this action does not seek to intervene, interfere or otherwise stop the arbitration proceedings, as those will be separately and independently challenged.

23. This is not the first time an NDA involving President Trump has become the source of contention. It was reported a similar arbitration proceeding was initiated by the Trump Campaign against former White House aide Omarosa Manigault-Newman for publication of her 2018 book "Unhinged", which details her time working for the USGOVT. *https://www.washingtontimes.com/news/2019/jan/29/cliff-sims-team-vipers-book-made-stories-and-ficti/*. Upon information and belief, President Trump also directed, instructed and/or authorized the Trump Campaign to pursue Ms. Manigault-Newman's alleged violation of an NDA notwithstanding the fact her book constitutes constitutionally protected speech.

24. It was also reported that lawyers for President Trump threatened Steve Bannon, the former White House Chief Strategist, on the basis that he had also violated an NDA regarding comments he made regarding his time in governmental service. See *http://time.com/5518135/donald-trump-non-disclosure-agreements/* (last accessed February 10, 2019).

25. Yet other books authored by those who either served in the White House and/or with the Trump Campaign have not led to the initiation of any type of legal or arbitration proceedings. See Sean Spicer, "The Briefing: Politics, The Press, and The President" (Regnery Publishing, 2018); Corey Lewandowski, "Trump's Enemies: How the Deep State Is Undermining the Presidency" (Center Street, 2018).

**Trump Campaign Is Being Directed And/Or Controlled By Governmental Personnel And Being Used For Governmental Purposes**

26. Upon information and belief, President Trump is directing, authorizing and/or otherwise approving substantive decisions of the Trump Campaign that are governmental in nature and for the purposes of concealing USGOVT involvement in order to silence Mr. Sims in a manner that would otherwise be unavailable under existing First Amendment case law.

27. Upon information and belief, funds held by the Trump Campaign are being used to compensate attorneys, including those in the Arbitration proceeding against Mr. Sims and others, who are acting in the place of USGOVT attorneys. Trump campaign funds are also reportedly being utilized to compensate attorneys for Jared Kushner, a Trump family member and senior federal employee, for matters related to his government service. See *https://abcnews.go.com/ Politics/trump-campaign-paid-legal-fees-firm-representing-jared/story?id=60912887* (last accessed February 10, 2019).

28. The USGOVT, for the first time ever through the use of private surrogates, is seeking to unconstitutionally censor and punish a former federal employee for disclosing unclassified information outlining what he saw and observed during his time in the White House. To permit this circumvention of decades of judicial and institutional precedent regarding the First Amendment rights of former federal employees would chill free speech and impermissibly censor the disclosure of information of public interest regarding the actions of the USGOVT.

## FIRST CAUSE OF ACTION
## (FIRST AMENDMENT/DECLARATORY JUDGMENT)

29. The plaintiff, Mr. Sims, repeats and realleges paragraphs 6 through 28 above, inclusive.

30. Mr. Sims has a constitutionally protected right under the First Amendment to the United States Constitution to be free from unlawful infringement upon or restraint of his ability to disclose unclassified information regarding which he learned during his tenure as a federal employee.

31. The actions of the USGOVT seek to penalize Mr. Sims for exercising his First Amendment right to disclose unclassified information regarding which he learned during his tenure as a federal employee. The actions of the USGOVT further seek to prohibit any further remarks or statements by Mr. Sims regarding unclassified information he learned during his tenure as a federal employee, as well as demand the return of information or materials Mr. Sims has in his possession from his tenure as a federal employee.

32. The Trump Campaign's Demand for Arbitration is nothing but a subterfuge for the actions of the USGOVT and were undertaken under express authorization and instruction, and certainly with the blessing of, President Trump. These actions sufficiently and constructively qualify as "state action" for purposes of First Amendment jurisdictional authority. Plainly speaking, the USGOVT has infringed upon Mr. Sims' First Amendment rights as a former federal employee and acted contrary to the interests of public policy.

33. Due to the actions of the USGOVT, Mr. Sims could suffer monetary penalties for the publication of "Team of Vipers", as well as for any future remarks – whether written or verbal – he makes in the future regarding his tenure in President Trump's White House.

34. Thus, Mr. Sims has suffered or may suffer actual adverse and harmful effects, including, but not limited to, possible civil penalties, a delay in being able to timely comment on

information of public interest, and/or lost or jeopardized present or future financial opportunities, which impairs his ability to serve the public.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Clifton David Sims respectfully requests that this Honorable Court:

1.   Enter a declaratory judgment in favor of the Plaintiff declaring that the Defendants may not enforce, whether directly or through non-U.S. Government cutouts, any nondisclosure agreements that seek to unconstitutionally infringe upon his First Amendment rights;

2.   Permanently enjoin the Defendants from initiating or pursuing further proceedings against the Plaintiff for publication of unclassified information regarding which he learned during his tenure as a federal employee;

3.   Award the Plaintiff the costs of the action and reasonable attorney fees under the Equal Access to Justice Act or any other applicable law;

4.   Award any appropriate compensation to the Plaintiff for any losses suffered or expenses incurred due to the Defendants' actions; and

5.   grant such other relief as the Court may deem just and proper.

Date:   February 11, 2019

Respectfully submitted,


_____/s/_____
Mark S. Zaid
D.C. Bar #440532
Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 700
Washington, DC 20036
(202) 454-2809
(202) 330-5610 fax
Mark@MarkZaid.com

Attorneys for Plaintiff