# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CLIFTON DAVID SIMS,<br><br>       Plaintiff,<br><br>  v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; and UNITED STATES OF AMERICA,<br><br>       Defendants. | Case No. 1:19-cv-345 (CKK) |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 2

STANDARD OF REVIEW ........................................................................................... 6

ARGUMENT .................................................................................................................. 7

    I.    THE ARBITRATION PROVISION OF PLAINTIFF'S AGREEMENT
         REQUIRES DISMISSING HIS COMPLAINT. ................................... 7

    II.    THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF
         SUBJECT-MATTER JURISDICTION.............................................. 10

         A.    Sovereign Immunity Bars Plaintiff's Claims Against The United
            States. ...................................................................................... 10

         B.    Plaintiff's Claim Against The President Should Be Dismissed
            Because Declaratory Relief May Not Be Ordered Against The
            President In His Official Capacity. .......................................... 12

         C.    Plaintiff Lacks Standing Because He Has Not Alleged A
            Cognizable Injury..................................................................... 13

         D.    Plaintiff's Claim Is Unripe Because An Arbitrator Has Not Yet
            Determined Whether The Agreement Is Enforceable Or Whether
            Plaintiff Breached The NDA. .................................................. 17

    III.    THE RELEVANT FACTORS WEIGH STRONGLY AGAINST THE
         COURT EXERCISING JURISDICTION OVER PLAINTIFF'S
         DECLARATORY JUDGMENT ACT CLAIM. .................................. 19

CONCLUSION.............................................................................................................. 22

# TABLE OF AUTHORITIES

## CASES

*ACLU Found. of S. Cal. v. Barr*,
    952 F.2d 457 (D.C. Cir. 1991) ........................................................................... 20

*Alexander v. Metro-Goldwyn-Mayer Studios, Inc.*,
    Case No. CV 17-3123-RSWL-KSx, 2017 WL 5633407 ........................................ 4

*Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*,
    531 F.3d 863 (D.C. Cir. 2008) ............................................................................. 6

*Am. Fed'n of Gov't Emps. v. O'Connor*,
    747 F.2d 748 (D.C. Cir. 1984) ........................................................................... 19

*Am. Petroleum Inst. v. EPA*,
    683 F.3d 382 (D.C. Cir. 2012) ..................................................................... 17, 18

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ........................................................................................... 8

*Atl. States Legal Found., Inc. v. EPA*,
    325 F.3d 281 (D.C. Cir. 2003) ........................................................................... 17

*Benvenuti v. Dep't of Def.*,
    587 F. Supp. 348 (D.D.C. 1984) ......................................................................... 11

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ..................................................................................... 14, 17

*Contec Corp. v. Remote Solution, Co.*,
    398 F.3d 205 (2d Cir. 2005) ............................................................................ 8, 9

*Cty. of Santa Clara v. Trump*,
    250 F. Supp. 3d 497 (N.D. Cal. 2017) ................................................................. 13

*Day v. Obama*,
    No. 1:15-cv-00671, 2015 WL 2122289 (D.D.C. May 1, 2015) ............................. 13

*Dep't of the Army v. Fed. Labor Relations Auth.*,
    56 F.3d 273 (D.C. Cir. 1995) ............................................................................. 11

*Dorsey v. U.S. Dep't of Labor*,
    41 F.3d 1551 (D.C. Cir. 1994) ........................................................................... 11

*Fairbanks v. Roller,*
  314 F. Supp. 3d 85 (D.D.C. 2018) ................................................................... 4

*Fallo v. High-Tech Inst.,*
  559 F.3d 874 (8th Cir. 2009) ........................................................................... 8

*Farah v. Esquire Magazine, Inc.,*
  863 F. Supp. 2d 29 (D.D.C. 2012) ................................................................... 4

*FiberLight, LLC v. Nat'l R.R. Passenger Corp.,*
  81 F. Supp. 3d 93 (D.D.C. 2015) ........................................................... 7, 20, 21

*First Va. Bank v. Randolph,*
  110 F.3d 75 (D.C. Cir. 1997) ..................................................................... 11, 12

*Forrester v. U.S. Parole Comm'n,*
  310 F. Supp. 2d 162 (D.D.C. 2004) ............................................................ 7, 16

*Fox v. Computer World Servs. Corp.,*
  920 F. Supp. 2d 90 (D.D.C. 2013) ................................................................. 10

*Franklin v. Massachusetts,*
  505 U.S. 788 (1992), *vacated and remanded on other grounds,* 138 S. Ct. 353 (2017) .......... 12

*French v. Devine,*
  547 F. Supp. 443 (D.D.C. 1982) .................................................................... 16

*Green Tree Fin. Corp. – Ala. v. Randolph,*
  531 U.S. 79 (2000) ......................................................................................... 6

*Haire v. Smith, Currie & Hancock LLP,*
  925 F. Supp. 2d 126 (D.D.C. 2013) .............................................................. 8, 9

*Hanes Corp. v. Millard,*
  531 F.2d 585 (D.C. Cir. 1976) ................................................................... 20, 21

*Hines v. Overstock.com, Inc.,*
  380 F. App'x 22 (2d Cir. 2010) ....................................................................... 6

*In re McConnell,*
  Case No. 2:15–cv–08183–R, 2015 WL 6125649 ............................................ 4

*Int'l Refugee Assistance Project v. Trump,*
  857 F.3d 554 (4th Cir. 2017) ........................................................................ 12

*J. Roderick MacArthur Found. v. F.B.I.*,
    102 F.3d 600 (D.C. Cir. 1996) ...................................................................... 16, 17

*Lemon v. Geren*,
    514 F.3d 1312 (D.C. Cir. 2008) ............................................................................ 13

*Lovitky v. Trump*,
    308 F. Supp. 3d 250 (D.D.C. 2018) ...................................................................... 20

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...................................................................... 6, 14, 16, 17

*Lynch v. United States*,
    292 U.S. 571 (1934) ............................................................................................ 11

*Maryland Cas. Co. v. Pac. Coal & Oil Co.*,
    312 U.S. 270 (1941) ............................................................................................ 19

*Mercadante v. XE Servs., LLC*,
    78 F. Supp. 3d 131 (D.D.C. 2015) ...................................................................... 8, 9

*Mississippi v. Johnson*,
    71 U.S. (4 Wall) 475 (1866) ................................................................................ 12

*Monsanto Co. v. Geerston Seed Farms*,
    561 U.S. 139 (2010) ............................................................................................ 12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ...................................................................................... 6, 7, 8

*Nat'l Park Hospitality Ass'n v. Dep't of,Inter.*,
    538 U.S. 803 (2003) ............................................................................................ 17

*Nat'l Student Ass'n v. Hershey*,
    412 F.2d 1103 (D.C. Cir. 1969) ............................................................................ 16

*Nat'l Treasury Emps. Union v. United States*,
    101 F.3d 1423 (D.C. Cir. 1996) ............................................................................ 17

*Nelson v. Insignia/Esg, Inc.*,
    215 F. Supp. 2d 143 (D.D.C. 2002) ...................................................................... 6, 9

*Newdow v. Bush*,
    391 F. Supp. 2d 95 (D.D.C. 2005) ........................................................................ 12

*Newdow v. Roberts*,
    603 F.3d 1002 (D.C. Cir. 2010) ................................................................. 10, 12, 13

*NRDC v. EPA*,
    464 F.3d 1 (D.C. Cir. 2006) ................................................................. 14

*POM Wonderful LLC v. F.T.C.*,
    894 F. Supp. 2d 40 (D.D.C. 2012) ................................................................. 21, 22

*Pub. Affairs Assocs. v. Rickover*,
    369 U.S. 111 (1962) ................................................................. 7

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010) ................................................................. 9

*Rep. of Argentina v. BG Group PLC*,
    665 F.3d 1363 (D.C. Cir. 2012) ................................................................. 8

*Riley v. BMO Harris Bank, N.A.*,
    61 F. Supp. 3d 92 (D.D.C. 2014) ................................................................. 6, 9

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*,
    490 U.S. 477 (1989) ................................................................. 8

*Sakyi v. Estee Lauder Cos.*,
    308 F. Supp. 3d 366 (D.D.C. 2018) ................................................................. 6, 8, 10

*Settle v. Obama*,
    No. 3:15-cv-365, 2015 WL 7283105 (E.D. Tenn. Nov. 17, 2015) ................................................................. 13

*Stone v. Holder*,
    859 F. Supp. 2d 48 (D.D.C. 2012) ................................................................. 11

*Swan v. Clinton*,
    100 F.3d 973 (D.C. Cir. 1996) ................................................................. 12

*Tri-State Hosp. Supply Corp. v. United States*,
    341 F.3d 571 (D.C. Cir. 2003) ................................................................. 11

*United States v. Mitchell*,
    463 U.S. 206 (1983) ................................................................. 10

*United States v. N.Y. Rayon Importing Co.*,
    329 U.S. 654 (1947) ................................................................. 11

*W&T Travel Servs., LLC v. Priority One Servs., Inc.*,
    69 F. Supp. 3d 158 (D.D.C. 2014) ........................................................... 9

*Walton v. Fed. Bureau of Prisons*,
    533 F. Supp. 2d 107 (D.D.C. 2008) ........................................................ 11

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ................................................................................ 14

*Willis v. U.S. Dep't of Health & Human Servs.*,
    38 F. Supp. 3d 1274 (W.D. Okla. 2014) ................................................. 13

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995) ...................................................................... 7, 19, 20

## STATUTES

9 U.S.C. § 2 ........................................................................................... 6, 9

28 U.S.C. § 1331 ...................................................................................... 11

28 U.S.C. § 2201 ................................................................................ 19, 20

28 U.S.C. §§ 2201-2202 ................................................................... 5, 7, 11

## RULES

Federal Rule of Civil Procedure 12(b)(1) ................................................. 7

Federal Rule of Civil Procedure 56(c) ..................................................... 16

## OTHER AUTHORITIES

Amazon.com, Amazon Charts: The Top 20 Most Sold & Most Read Books of the Week, Week
    of February 3, 2019, https://www.amazon.com/charts/-2019-02-03/mostsold/nonfiction/.... 3, 4

Amazon.com, *Team of Vipers; My 500 Extraordinary Days in the Trump White House
    by Cliff Sims*, https://www.amazon.com/Team-Vipers-Extraordinary-Trump-
    White/dp/125022389X/ref=tmm_hrd_swatch_0?_encoding=UTF8-&qid=&sr=............... 4, 15

Sam Brodey & Asawin Suebsaeng, *Trump to GOP: Sorry, but You're Gonna Have to Campaign
    on Obamacare Repeal*, THE DAILY BEAST, Apr. 2, 2019, https://www.yahoo.com/news/
    trump-republicans-sorry-gonna-campaign-015340202.html ...................................... 4

*The New York Times* Best Sellers list for Combined Print & E-Book Nonfiction. THE NEW YORK
  TIMES *Best Sellers: Combined Print & E-Book Nonfiction*, N.Y. TIMES (Feb. 17, 2019),
  https://www.nytimes.com/books/best-sellers/2019/02/17 ......................................................... 4

Clifton D. Sims, *Team of Vipers: My 500 Extraordinary Days in the
  Trump White House (2018)* .......................................................................................................... 3

Instagram post of Cliff Sims (Nov. 22, 2018),
  https://www.instagram.com/p/Bqgbi5uHMrv/ ......................................................................... 3

Tweet of Cliff Sims (Feb. 5, 2019),
  https://twitter.com/Cliff_Sims/status/1092986210442719233 ............................................ 4, 16

Tweet of Cliff Sims (Feb. 14, 2019),
  https://twitter.com/Cliff_Sims/status/1096061262935609347 ............................................ 4, 16

Tweet of Cliff Sims (Mar. 19, 2019),
  https://twitter.com/Cliff_Sims/status/1108100214299201536 ............................................ 4, 16

Press Release, St. Martin's Press, Former White House Staffer to Release First Honest Insider's
  Account of the Trump Administration (Nov. 19, 2018), https://us.macmillan.com/wp-
  content/uploads/2018/11/Cliff-Sims-Announcement.pdf ........................................................... 3

Todd Stacy, *Cliff Sims' 'Team of Vipers' book set for release January 29*, ALA. DAILY NEWS,
  Nov. 19, 2018, www.aldailynews.com/cliff-sims-team-of-vipers-book-set-
  for-release-january-29 .................................................................................................................. 3

Wright & Miller, 10 Federal Practice and Procedure § 2759 (1973) ........................................... 20

Wright & Miller, 10B Federal Practice and Procedure § 2757 (4th ed. 2013) ............................ 19

Wright & Miller, 10B Federal Practice and Procedure § 2759 (4th ed. 2013) ............................ 21

## INTRODUCTION

Private employers do not violate the First Amendment when they bring claims in arbitration to enforce a nondisclosure agreement even if the employee they are enforcing that agreement against later served in government.  Plaintiff disagrees, but he has no legitimate basis for doing so. The plaintiff does not dispute that there is a contract between him and Donald J. Trump for President, Inc. (the "Campaign"), that he freely signed the contract, that the contract contained restrictions on his disclosure of information related to his employment, that the plaintiff published a book in which he disclosed information covered by those contractual disclosure restrictions, or that the contract contains a provision requiring that he arbitrate any claims arising out of the contract.  Nor does plaintiff advance any allegation that the Government is in any way restricting or infringing his speech.  To the contrary, he has been on a lengthy media tour that amply demonstrates he has not been censored, silenced, or otherwise chilled from exercising his First amendment rights.  Plaintiff's claims should be dismissed, for several reasons.

*First*, the Federal Arbitration Act ("FAA") requires that private arbitrators decide the threshold question of arbitrability where, as here, the relevant agreement assigns that question to the arbitrator.  Plaintiff's sole claim is that the Campaign's arbitration agreement is invalid, such that the Campaign's arbitration efforts ought to be enjoined.  But under plaintiff's agreement, that question is for the arbitrator.  For that reason alone, the Court should dismiss plaintiff's complaint.

*Second*, the Court should dismiss the complaint for lack of subject-matter jurisdiction.  This is clear both because the plaintiff has not identified any applicable waiver of sovereign immunity that entitles him to sue the United States, and because plaintiff has not alleged any actual or imminent injury at the hands of the defendants sufficient to supply standing.  Plaintiff does not actually allege that the Campaign's filing of an arbitration action has had the effect of censoring,

silencing, or even chilling his speech, and plaintiff's own actions clearly controvert any such allegation.   And for similar reasons, plaintiff has failed to demonstrate that his claim is constitutionally or prudentially ripe.   Each of these jurisdictional defects independently compels dismissal of plaintiff's complaint.

Finally, because plaintiff's claim is based on the Declaratory Judgment Act, this Court retains discretion over whether to exercise jurisdiction.   And the factors that govern whether to withhold jurisdiction over a Declaratory Judgment Act claim weigh against exercising jurisdiction here, where an arbitration proceeding is already pending and is fully capable of resolving the issues plaintiff has raised.   Plaintiff's real goal appears to be circumventing that arbitration proceeding, which is not an appropriate use of the Declaratory Judgment Act.   For that reason, too, the Court should dismiss the complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2016, plaintiff was employed by Donald J. Trump for President, Inc.  Compl. ¶¶ 3, 13. In connection with that employment, plaintiff signed a contract ("Agreement") in which he agreed to certain conditions on the disclosure or publication of certain information. *Id.* ¶ 13; *see generally* Agreement, attached hereto as Ex. A.  These conditions included an agreement "not to disclose, disseminate, or publish, or cause to be disclosed, disseminated, or published" any "information (whether or not embodied in any media) of a private . . . or confidential nature . . . including information with respect to the personal life, political affairs, and/or business affairs of Mr. Trump or of any . . . [m]ember" of Mr. Trump's family. *Id.* at 1, 3.  The Agreement further provided that "any dispute arising under or relating to" the Agreement would be "submitted to binding arbitration in the State of New York pursuant to the rules for commercial arbitrations of the American Arbitration Association" and that "[j]udgment upon the award rendered by an arbitrator

may be entered in any court having jurisdiction." *Id.* at 4.

On November 19, 2018, St. Martin's Press announced that on January 29, 2019, plaintiff would publish his book, *Team of Vipers: My 500 Extraordinary Days in the Trump White House*. Compl. ¶ 15; Press Release, St. Martin's Press, Former White House Staffer to Release First Honest Insider's Account of the Trump Administration (Nov. 19, 2018), https://us.macmillan.com/wp-content/uploads/2018/11/Cliff-Sims-Announcement.pdf (cited in Compl. ¶ 15).  That same day, an article in the *Alabama Daily News* stated that plaintiff "wrote in an email to friends" informing them that the book was "a memoir of [his] time on the Trump campaign and in the White House."  Todd Stacy, *Cliff Sims' 'Team of Vipers' book set for release January 29*, ALA. DAILY NEWS, Nov. 19, 2018, www.aldailynews.com/cliff-sims-team-of-vipers-book-set-for-release-january-29/ (cited in Compl. ¶ 15).  *See also* Instagram post of Cliff Sims (Nov. 22, 2018), https://www.instagram.com/p/Bqgbi5uHMrv/ ("On January 29, a memoir of my time on the @realdonaldtrump campaign and in the @whitehouse will be published by St. Martin's Press.").

Prior to the January 29, 2019 publication date, excerpts of plaintiff's book were published by several media outlets.  *See* Compl. ¶ 16 (citing excerpts published in *Vanity Fair*, *Breitbart*, and *The Washington Post*).  "Each of these excerpts dealt with matters learned during Mr. Sims' service as a federal employee" in the White House.  *Id.*  Further, "at no time prior to the public release of "Team of Vipers" on January 29, 2019, did [President Trump or the United States] take any action against Mr. Sims or seek to prevent the book's publication."  *Id.* ¶ 17.

For the week of February 3, 2019, plaintiff's book was the sixth most sold nonfiction book on Amazon.com.  *See* Amazon.com, Amazon Charts: The Top 20 Most Sold & Most Read Books of the Week, Week of February 3, 2019, https://www.amazon.com/charts/-2019-02-

03/mostsold/nonfiction/.  Plaintiff's book debuted as the third bestselling book on the February 17,

2019 *The New York Times* Best Sellers list for Combined Print & E-Book Nonfiction.  THE NEW

YORK TIMES *Best Sellers: Combined Print & E-Book Nonfiction*, N.Y. TIMES (Feb. 17, 2019),

*available at* https://www.nytimes.com/books/best-sellers/2019/02/17/.  As of the filing of this

brief, plaintiff's book remains for sale on Amazon.com.  *See* Amazon.com, <u>*Team of Vipers; My*</u>

<u>*500 Extraordinary Days in the Trump White House* by *Cliff Sims*</u>, https://www.amazon.com/Team-

Vipers-Extraordinary-Trump-White/dp/125022389X/ref=tmm_hrd_swatch_0?_encoding=UTF8-

&qid=&sr= (last accessed April 25, 2019).  And on April 15, 2019, plaintiff promoted the sale of

his   book   on   Twitter.   *See*   Tweet   of   Cliff   Sims   (Apr.   15,   2019),

https://twitter.com/Cliff_Sims/status/1117933635053735942.

   As recently as March 19, 2019, plaintiff posted an excerpt from the book on Twitter.  *See*

Tweet of Cliff Sims (Mar. 19, 2019), https://twitter.com/Cliff_Sims/status/1108100214299201536;

*see    also*    Tweet    of    Cliff    Sims    (Feb.    14,    2019),

https://twitter.com/Cliff_Sims/status/1096061262935609347; Tweet of Cliff Sims (Feb. 5, 2019),

https://twitter.com/Cliff_Sims/status/1092986210442719233.[1]  And plaintiff has spoken recently

to the media about information he learned during his federal employment.  *See, e.g.*, Sam Brodey

& Asawin Suebsaeng, *Trump to GOP: Sorry, but You're Gonna Have to Campaign on Obamacare*

---

[1] Pursuant to Federal Rule of Evidence 201(b), a court may take judicial notice of any fact that is not subject to "reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Applying this standard, courts in this district and others have taken judicial notice of Internet postings in resolving motions to dismiss.  *See, e.g.*, *Fairbanks v. Roller*, 314 F. Supp. 3d 85, 88 n.1 (D.D.C. 2018); *Farah v. Esquire Magazine, Inc.*, 863 F. Supp. 2d 29, 35 (D.D.C. 2012); *Alexander v. Metro-Goldwyn-Mayer Studios, Inc.*, Case No. CV 17-3123-RSWL-KSx, 2017 WL 5633407, Slip op. *3 (C.D. Cal. 2017); *In re McConnell*, Case No. 2:15–cv–08183–R, 2015 WL 6125649, Slip op. *5 n.7 (C.D. Cal. Bankr. Oct. 8, 2105).

*Repeal*, THE DAILY BEAST, Apr. 2, 2019*, available at* https://www.yahoo.com/news/trump-republicans-sorry-gonna-campaign-015340202.html (describing recent remarks plaintiff made to *The Daily Beast* regarding efforts to repeal the Affordable Care Act undertaken while President Trump was in office).

On January 31, 2019, the Campaign filed an arbitration claim against plaintiff for "purported breaches" of the Agreement.  Compl. ¶ 21.  Then, on February 11, 2019, plaintiff filed this suit against President Donald J. Trump, in his official capacity, and the United States (collectively, "defendants"), asserting a single cause of action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the First Amendment to the U.S. Constitution.  *Id.* ¶¶ 29-34. The complaint alleges that the "Campaign's Demand for Arbitration is nothing but a subterfuge for the actions of the [defendants] and [was] undertaken under express authorization and instruction, and certainly with the blessing of, President Trump" and thus "sufficiently and constructively qualif[ies] as 'state action' for purposes of First Amendment jurisdictional authority."  *Id.* ¶ 32.  The complaint further alleges that because the Campaign filed an arbitration claim against plaintiff for purported breaches of his Agreement, defendants here have "infringed upon [plaintiff's] First Amendment rights as a former federal employee and acted contrary to the interests of public policy."  *Id.*  The complaint asks the Court to "[e]nter a declaratory judgment in favor of the Plaintiff declaring that the Defendants may not enforce, either directly or through non-U.S. government cutouts, any nondisclosure agreements that seek to unconstitutionally infringe upon his First Amendment rights," and to "[p]ermanently enjoin the Defendants from initiating or pursuing further proceedings against the Plaintiff for publication of unclassified information regarding [(*sic*)] which he learned during his tenure as a federal employee."  *Id.*, Prayer for Relief.

## STANDARD OF REVIEW

Defendants move the court to dismiss the complaint.  The Federal Arbitration Act ("FAA"),

9 U.S.C. § 2, governs "any arbitration agreement within the coverage of the Act."  *Moses H. Cone*

*Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  "[T]he validity of an unambiguous

arbitration agreement is a question of law for the court that may be resolved by summary

disposition under the summary judgment standard of Federal Rule of Civil Procedure 56(c)."  *Sakyi*

*v. Estee Lauder Cos.*, 308 F. Supp. 3d 366, 375 (D.D.C. 2018) (citing *Aliron Int'l, Inc. v. Cherokee*

*Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008)).  The party advocating arbitration need

only "'demonstrat[e] that an agreement to arbitrate was made,'" and "'the party resisting

arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.'"  *Id.*

(quoting *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010), and *Green Tree Fin.*

*Corp. – Ala. v. Randolph*, 531 U.S. 79, 91 (2000)).  *See also id.* (noting that the moving party need

not "'show initially that the agreement would be *enforceable*, merely that one existed'" (quoting

*Hines*, 380 F. App'x at 24)).  Whether a defendant has chosen to file a motion to compel arbitration,

a motion for summary judgment, or a motion to dismiss in favor of arbitration, the "distinction . .

. is immaterial for the purposes of [the court's] standard of review analysis."  *Nelson v.*

*Insignia/Esg, Inc.*, 215 F. Supp. 2d 143, 147 n.3 (D.D.C. 2002).  And when "'all of the plaintiff's

claims must be submitted to arbitration' dismissal is appropriate."  *Riley v. BMO Harris Bank,*

*N.A.*, 61 F. Supp. 3d 92, 103 (D.D.C. 2014) (quoting *Nelson*, 215 F. Supp. 2d at 158).

Defendants also move to dismiss the complaint for lack of subject matter jurisdiction under

Federal Rule of Civil Procedure 12(b)(1).  Plaintiff bears the burden of demonstrating jurisdiction.

*See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Because the Court has "'an

affirmative obligation . . . to ensure that it is acting within the scope of its jurisdictional authority,'"

the Court may "consider matters outside the pleadings" in addressing defendants' motion to dismiss under Rule 12(b)(1) without converting it to a motion for summary judgment. *Forrester v. U.S. Parole Comm'n*, 310 F. Supp. 2d 162, 167 (D.D.C. 2004) (citation omitted).

Finally, defendants urge the court to decline jurisdiction over the sole claim in plaintiff's complaint, which is brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. The Supreme Court has explained that "[t]he Declaratory Judgment Act was an authorization, not a command," *Pub. Affairs Assocs. v. Rickover*, 369 U.S. 111, 112 (1962), and "whether or not to accede to a plaintiff's request for declaratory relief under the Declaratory Judgment Act lies within the court's discretion." *FiberLight, LLC v. Nat'l R.R. Passenger Corp.*, 81 F. Supp. 3d 93, 113 (D.D.C. 2015) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)).

## ARGUMENT

### I. THE ARBITRATION PROVISION OF PLAINTIFF'S AGREEMENT REQUIRES DISMISSING HIS COMPLAINT.

Plaintiff previously agreed to resolve any disputes with the Campaign in binding arbitration. Ex. A at 4. That agreement requires plaintiff to take his objections to his employment contract's nondisclosure provision to the arbitrator currently presiding over the Campaign's arbitration proceeding against him. *Id.* Plaintiff has instead come to this Court arguing that the Campaign's arbitration demand infringes his First Amendment rights, but that is simply an attack on the validity of arbitration—something the FAA requires be litigated before the arbitrator where, as here, the parties' contract contains an arbitration clause that delegates the question of arbitrability to the arbitrator. For that reason alone, dismissal is appropriate.

Plaintiff's claim falls within his arbitration agreement with the Campaign. Indeed, his claim is entirely about the Campaign and its ability to initiate an arbitration proceeding against him. That issue is "govern[ed]" by "[f]ederal law in the terms of the Arbitration Act." *Moses H.*

*Cone Mem. Hosp.*, 460 U.S. at 24. The FAA reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citation omitted), and "strongly favors the enforcement of agreements to arbitrate as a means of securing prompt, economical and adequate solution of controversies," *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 479-80 (1989) (internal quotation marks and citation omitted).

Plaintiff's Agreement with the Campaign clearly delegates questions of arbitrability to the arbitrator. The Agreement's arbitration provision provides that "any dispute arising under or relating to this agreement may . . . be submitted to binding arbitration in the State of New York pursuant to the rules for commercial arbitrations of the American Arbitration Association [("AAA rules")], and [plaintiff] hereby agree[s] to and will not contest such submissions." Ex. A at 4. As courts in this district and "numerous" circuit courts of appeals have held, "'incorporation of the AAA rules constitutes clear and unmistakable evidence that the parties intended the question of arbitrability be answered by an arbitrator." *Mercadante v. XE Servs., LLC*, 78 F. Supp. 3d 131, 138 (D.D.C. 2015); *see also Sakyi*, 308 F. Supp. 3d at 378 (noting that this court, and every circuit court to address the question, "repeatedly has held that adopting the AAA rules makes the issue of arbitrability one for the arbitrator, not the court, to decide" and citing cases); *Haire v. Smith, Currie & Hancock LLP*, 925 F. Supp. 2d 126, 132-33 (D.D.C. 2013) (citing *Rep. of Argentina v. BG Group PLC*, 665 F.3d 1363, 1371 (D.C. Cir. 2012)) (finding that "[a] recent D.C. Circuit opinion strongly suggests that the D.C. Circuit would view incorporation of the AAA Rules as satisfying" the clear and unmistakable standard, and noting that "courts in this jurisdiction . . . have . . . found that incorporation of the AAA Rules satisfies the . . . standard"); *accord Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 211 (2d

Cir. 2005).   Plaintiff's effort to avoid arbitration must accordingly be raised in the ongoing arbitration, rather than here.

Plaintiff might argue that his agreement to resolve arbitrability in arbitration is somehow legally invalid, revocable, or unenforceable, *see* 9 U.S.C. § 2, which would be something the Court ought to "consider . . . before ordering compliance.'" *Mercadante*, 78 F. Supp. 3d at 140.  But that sort of challenge "must be directed specifically at the delegation agreement and not at 'another provision of the contract, or to the contract as a whole,'" *id.* (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010)), and plaintiff asserts no challenge to the provision in the Agreement delegating questions of arbitrability to an arbitrator.  In fact, plaintiff's complaint says nothing about the delegation provision at all.  Rather, plaintiff challenges the "application of [the Agreement]" as a whole and the filing of "an arbitration claim against [plaintiff] for purported breaches of [the Agreement]."  Compl. ¶¶ 10, 21.  That sort of generalized challenge is not a challenge specifically to the delegation and is thus something the delegation provision requires plaintiff to raise in arbitration.  *See, e.g.*, *Mercadante*, 78 F. Supp. 3d at 140 (explaining that because plaintiff's claim "does not specifically address the delegation agreement itself as required by *Rent-A-Center*," plaintiff has "failed to successfully challenge the enforceability of the delegation agreement"); *Haire*, 925 F. Supp. 2d at 133.

Plaintiff's only claim seeks invalidation of his ongoing arbitration proceeding and where, as here, "'all of the plaintiff's claims must be submitted to arbitration' dismissal is appropriate." *Riley*, 61 F. Supp. 3d at 103 (quoting *Nelson*, 215 F. Supp. 2d at 158); *see also, e.g.*, *W&T Travel Servs., LLC v. Priority One Servs., Inc.*, 69 F. Supp. 3d 158, 174 (D.D.C. 2014) ("follow[ing] the majority rule regarding the propriety of dismissing a case where all of the claims are subject to resolution by the arbitrator"); *Haire*, 925 F. Supp. 2d at 134 (dismissing case where "the parties

intended the issue of arbitrability to be resolved by the arbitrator[, and] all other claims brought by plaintiffs are essentially challenges to aspects of the [agreement], which likewise belong with the arbitrator"); *Fox v. Computer World Servs. Corp.*, 920 F. Supp. 2d 90, 105 n.9 (D.D.C. 2013) (noting that the court was "dismiss[ing] this case rather than stay[ing] it pending arbitration, in accordance with the approach adopted by other courts when all claims must be submitted to arbitration"); *accord Sakyi*, 308 F. Supp. 3d at 387 n.9 (citing cases).  For that reason alone, the Court should dismiss the complaint.

## II.   THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION.

Even if plaintiff could avoid arbitration, this Court would not have jurisdiction to hear his claim for a variety of reasons.  *First*, and most fundamentally, plaintiff has sued the United States but sovereign immunity bars that claim.  *Second*, plaintiff has sued the President in his official capacity but this Court cannot redress any alleged injury at the President's hands.  That is because, "[w]ith regard to the President, courts do not have jurisdiction to enjoin him, and have never submitted the President to declaratory relief."  *Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010).  *Third*, plaintiff has not alleged any constitutionally cognizable injury: he asserts that the defendants have somehow threatened his right to speak when in fact he has been exercising his freedom of speech liberally and without restraint.  *Finally*, because plaintiff has not alleged any limitation on his speech or any actual harm from the arbitration to which he objects, plaintiff's claims are neither constitutionally nor prudentially ripe and should be dismissed on that basis too.

### A.  Sovereign Immunity Bars Plaintiff's Claims Against the United States.

Sovereign immunity bars plaintiff's claim against the United States.  "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction," *United States v. Mitchell*, 463 U.S. 206, 212 (1983), and a court lacks

jurisdiction over claims against the United States unless the United States' sovereign immunity has been explicitly waived, *see Dep't of the Army v. Fed. Labor Relations Auth.*, 56 F.3d 273, 275 (D.C. Cir. 1995) (citing *United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 660 (1947)); *First Va. Bank v. Randolph*, 110 F.3d 75, 77 (D.C. Cir. 1997) ("if the government has not consented to the suit, sovereign immunity requires the court to dismiss the action for lack of jurisdiction").  Only Congress may waive the sovereign immunity of the United States, and it must do so equivocally.  *See, e.g.*, *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003) ("[W]aiver of sovereign immunity must be unequivocally expressed in the statutory text and strictly construed, in terms of its scope, in favor of the sovereign.") (internal quotation marks and citation omitted); *Dorsey v. U.S. Dep't of Labor*, 41 F.3d 1551, 1555 (D.C. Cir. 1994) ("The federal government's waiver of sovereign immunity must be unequivocally expressed.").

Plaintiff has pointed to no applicable waiver of sovereign immunity.  Plaintiff cites as the basis of this Court's jurisdiction 28 U.S.C. § 1331 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.  Compl. ¶ 1.  Neither statute waives sovereign immunity.  Section 1331, while establishing district courts' jurisdiction over federal questions, does not waive the sovereign immunity of the United States.  *See Stone v. Holder*, 859 F. Supp. 2d 48, 51 (D.D.C. 2012).  The Declaratory Judgment Act authorizes declaratory relief as a remedy but likewise does not waive the federal government's sovereign immunity.  *See Walton v. Fed. Bureau of Prisons*, 533 F. Supp. 2d 107, 114 (D.D.C. 2008).  And though plaintiff alleges his claims arise under the First Amendment, the Constitution does not waive sovereign immunity.  *See Lynch v. United States*, 292 U.S. 571, 582 (1934) (sovereign immunity "applies alike to causes of action arising under acts of Congress . . . and to those arising from some violation of rights conferred upon the citizen by

the Constitution"); *Benvenuti v. Dep't of Def.*, 587 F. Supp. 348, 352 (D.D.C. 1984) (the "Constitution itself" does not "operate as such [a] waiver[]"). The Court should thus "dismiss the action for lack of jurisdiction" pursuant to Rule 12(b)(1). *First Va. Bank*, 110 F.3d at 77.

### B. Plaintiff's Claim Against the President Should Be Dismissed Because Declaratory Relief May Not Be Ordered Against the President In His Official Capacity.

Plaintiff's claim against the President in his official capacity fails for a similarly fundamental reason: whatever injury plaintiff alleges is not "redressable by a favorable ruling" from this Court. *Monsanto Co. v. Geerston Seed Farms*, 561 U.S. 139, 149 (2010). The Supreme Court and D.C. Circuit have made clear that courts lack authority to issue injunctive or declaratory relief against the President in his official capacity. *See Mississippi v. Johnson*, 71 U.S. (4 Wall) 475, 501 (1866) (courts lack jurisdiction "to enjoin the President in the performance of his official duties"); *Newdow*, 603 F.3d at 1013 (plaintiff failed to show redressability where the "only apparent avenue of redress for plaintiffs' claimed injuries would be injunctive or declaratory relief against . . . the President himself" finding such relief "unavailable" because "[w]ith regard to the President, courts do not have jurisdiction to enjoin him, and have never submitted the President to declaratory relief") (citing *Johnson*, 71 U.S. (4 Wall.) at 499, and *Franklin v. Massachusetts*, 505 U.S. 788, 827-28 (1992) (Scalia, J., concurring)); *Swan v. Clinton*, 100 F.3d 973, 976 n.1 (D.C. Cir. 1996) (recognizing that the same concerns that preclude injunctive relief against the President also preclude declaratory relief).[2] Plaintiff's claims against the President in his official capacity

---

[2] Numerous other courts have held that the President is not subject to declaratory and injunctive relief when sued in his official capacity. *See, e.g.*, *Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554, 605 (4th Cir. 2017) (holding that "the district court erred in issuing an injunction against the President himself," because "'in general, this court has no jurisdiction of a bill to enjoin the President in the performance of his official duties'" (quoting *Franklin*, 505 U.S. at 802-03 (opinion of O'Connor, J.))), *vacated and remanded on other grounds,* 138 S. Ct. 353 (2017); *Newdow v. Bush*, 391 F. Supp. 2d 95, 106-07 (D.D.C. 2005) (holding that plaintiff failed to show redressability

seek only declaratory and injunctive relief.  He thus cannot show his claims are "capable of being redressed by a court order," let alone that they are likely to be redressed.  *Lemon v. Geren*, 514 F.3d 1312, 1314 (D.C. Cir. 2008).

Plaintiff has sued the President in his official capacity and seeks an order (1) enjoining the President from "initiating or pursuing further proceedings against the Plaintiff for publication of unclassified information regarding which [(*sic*)] he learned during his tenure as a federal employee", and (2) declaring that the President "may not enforce . . . any nondisclosure agreements that seek to unconstitutionally infringe upon [the plaintiff's] First Amendment rights."  *See* Compl., Prayer for Relief.  That is relief this Court cannot provide, since a federal "court—whether via injunctive or declaratory relief—does not sit in judgment of a President's executive decisions." *Newdow*, 603 F.3d at 1012.  Plaintiff thus lacks standing to bring his claim against the President and that claim should be dismissed.  *Id.* at 1013 (dismissal appropriate where the "only apparent avenue of redress for plaintiffs' claimed injuries would be injunctive or declaratory relief against . . . the President himself").

### C.  Plaintiff Lacks Standing Because He Has Not Alleged A Cognizable Injury.

Plaintiff lacks standing to assert his claim against both defendants for an additional reason: he has not alleged any injury that is sufficiently imminent to support a cause of action.  Standing inquiries should be "especially rigorous when reaching the merits of the dispute would force [the

---

"where only an injunction or declaratory judgment against the President can redress plaintiff's injury," finding that "the Court is without the authority to grant such relief[ and t]o conclude otherwise[] would be to render meaningless the words of the Supreme Court and the D.C. Circuit that injunctions and declaratory judgments may not be issued against the President"); *Cty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 539–40 (N.D. Cal. 2017); *Settle v. Obama*, No. 3:15-cv-365, 2015 WL 7283105, at *6 (E.D. Tenn. Nov. 17, 2015); *Day v. Obama*, No. 1:15-cv-00671, 2015 WL 2122289, at *1 (D.D.C. May 1, 2015); *Willis v. U.S. Dep't of Health & Human Servs.*, 38 F. Supp. 3d 1274, 1277 (W.D. Okla. 2014)

court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (internal quotations and citation omitted). And here, plaintiff has failed to plead the sort of imminently impending injury necessary to confer standing.

Although "imminence" is a "somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes— that the injury is *certainly* impending." *Lujan*, 504 U.S. at 565 n.2. The Supreme Court has thus "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Clapper*, 568 U.S. at 409 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (emphasis added by court)). "'[S]ome day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 565 (emphasis in original); *see also NRDC v. EPA*, 464 F.3d 1, 6 (D.C. Cir. 2006) ("We . . . generally require that petitioners demonstrate a 'substantial probability' that they will be injured.").

Plaintiff has not pled this sort of imminent injury. The heart of plaintiff's complaint is his asserted right "under the First Amendment to the United States Constitution to be free from unlawful infringement upon or restraint of his ability to disclose unclassified information regarding [(*sic*)] which he learned during his tenure as a federal employee." Compl. ¶ 30. But while plaintiff alleges that defendants "ha[ve] infringed upon Mr. Sims' First Amendment rights as a former federal employee," *id.* ¶ 32, his complaint does not contain any allegations that give content to this conclusory assertion. Rather, the allegations addressing plaintiff's purported current or threatened future injury are limited to the following:

14

(1) "the Trump Campaign . . . filed an arbitration claim against Mr. Sims for purported breaches of an NDA," and such claim "seeks monetary damages, . . . and to enjoin Mr. Sims from making" certain disclosures, *id.* ¶ 21;

(2) the defendants "through the use of private surrogates, [are] seeking to unconstitutionally censor and punish" the plaintiff for disclosing certain information, *id.* ¶ 28;

(3) defendants "seek to penalize Mr. Sims for exercising his First Amendment right to disclose unclassified information" he learned during his federal employment, *id.* ¶ 31;

(4) defendants "seek to prohibit any further remarks or statements by Mr. Sims regarding" information he learned during his federal employment, *id.*;

(5) defendants' actions "demand the return of information or materials Mr. Sims has in his possession from his tenure as a federal employee," *id.*;

(6) due to defendants' actions, plaintiff "could suffer monetary penalties for the publication of 'Team of Vipers', as well as for any future remarks . . . he makes in the future regarding his" federal employment, *id.* ¶ 33; and

(7) plaintiff "has suffered or may suffer actual adverse and harmful effects, including, but not limited to, possible civil penalties, a delay in being able to timely comment on information of public interest, and/or lost or jeopardized present or future financial opportunities," *id.* ¶ 34.

None of these allegations establish injury for standing purposes.

**Allegation (1).** For the first allegation, plaintiff asserts that the Campaign's arbitration action against him violates his First Amendment rights. But nowhere does plaintiff make allegations showing how the Campaign's initiation of an arbitration action has had the effect of censoring, silencing, or even chilling his speech.

**Allegations (2)-(5).** In allegations two through five, plaintiff never claims that the defendants *have* censored or punished him for his speech; he alleges only that defendants "*seek*" to censor or punish him for his speech in various vague ways. *See id.* ¶¶ 28, 31. And in reality, it is clear plaintiff has not been censored at all. As of the filing of this brief, plaintiff's book is for sale on Amazon.com. *See supra* at 4 (citing Amazon.com page). As recently as April 15, 2019,

plaintiff has promoted the sale of his book on social media.  *See supra* at 4 (citing Tweets of Cliff

Sims).  And plaintiff has spoken recently to the media about information he learned during his

federal employment.  *See supra* at 4-5 (citing Brodey & Suebsaeng, "Trump to GOP: Sorry, but

You're Gonna Have to Campaign on Obamacare Repeal").  The court may consider these public

facts in assessing its jurisdiction, *see Forrester*, 310 F. Supp. 2d at 167, and they make clear that

the Campaign's January 31, 2019 arbitration claim has not infringed plaintiff's speech.  As for

plaintiff's conclusory allegation regarding the return of material he possesses from his time as a

federal employee, plaintiff never alleges that this supposed seeking of material has any connection

to his speech.  Nor does he allege that the material is actually his property, as opposed to

governmental property and information he is legally obligated to return upon leaving the

government's employ.

In short, while it is true that "[s]uits alleging injury in the form of a chilling effect upon

plaintiff's First Amendment rights are more readily justiciable than comparable suits not so

affected with a First Amendment interest," *French v. Devine*, 547 F. Supp. 443, 446 (D.D.C. 1982)

(citing *Nat'l Student Ass'n v. Hershey*, 412 F.2d 1103, 1113 (D.C. Cir. 1969)), plaintiff has not

alleged that defendants have chilled him from speech in which he otherwise desires to engage, let

alone alleged a chilling effect that is "sufficiently strong to render a case justiciable."  *Id.*

**Allegations (6)-(7).**  Finally, the remainder of plaintiff's allegations do not describe

"threatened harms" that are certainly impending.  Where a plaintiff "does not allege that it has yet

suffered any injury" that its complaint seeks to redress, then "its only hope for standing rests upon

showing that a threatened harm is '*certainly* impending.'"  *J. Roderick MacArthur Found. v. F.B.I.*,

102 F.3d 600, 606 (D.C. Cir. 1996) (emphasis in original) (quoting *Lujan*, 504 U.S. at 564 n.2).

To make such a showing, "[i]t is not enough for the [plaintiff] to assert that it might suffer an injury

in the future, or even that it is likely to suffer an injury at some unknown future time.  Such

'someday' injuries are insufficient."  *Id.* (quoting *Lujan*, 504 U.S. at 564).

Allegations (6) and (7) do not describe "threatened harms" that are "*certainly* impending."

Rather, they describe the remedies for breach laid out in the Agreement plaintiff entered into with

the Campaign, *see* Ex. A at 3-4, which the Campaign could therefore request as relief in arbitration.

But no arbitration award has been entered—for or against the plaintiff—and plaintiff does not

allege when any such decision might issue.  Plaintiff's future injuries are thus entirely hypothetical

rather than "*certainly* impending."  *See J. Roderick MacArthur Foundation*, 102 F.3d at 606.

Moreover, because the outcome of the arbitration is unknown, plaintiff's threatened harms

constitute mere "'allegations of *possible* future injury' [which] are not sufficient" to establish

standing.  *Clapper*, 568 U.S. at 409 (citation omitted).

### D. Plaintiff's Claim is Unripe Because An Arbitrator Has Not Yet Determined Whether the Agreement Is Enforceable Or Whether Plaintiff Breached the NDA.

Finally, even if the Court were to conclude that plaintiff's allegations could establish an

injury sufficient to support standing, his claim still must be dismissed because it is not yet ripe.

"The ripeness doctrine generally deals with when a federal court can or should decide a case," *Am.*

*Petroleum Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012), and has both constitutional and

prudential dimensions.  *See Atl. States Legal Found., Inc. v. EPA*, 325 F.3d 281, 284 (D.C. Cir.

2003).  As with standing, constitutional ripeness requires "that an injury in fact be certainly

impending." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996).

And a court considering prudential ripeness "evaluate[s] (1) the fitness of the issues for judicial

decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park*

*Hospitality Ass'n v. Dep't of Inter.*, 538 U.S. 803, 808 (2003); *see Am. Petroleum*, 683 F.3d at 386.

Here, plaintiff's claims are constitutionally unripe for similar reasons to those that deprive him of standing.  Plaintiff has not alleged that he has been prevented from speaking or that his speech is currently being infringed, which it plainly is not given that plaintiff continues to sell his book, publish excerpts of his book on social media, and disclose to the media information he learned as a federal employee.  *See supra* at 4-5.  Even if plaintiff had alleged that defendants' actions chilled him from speech in which he otherwise desires to engage, the same evidence of plaintiff's recent actions would refute any such allegation of subjective chill.  *See supra* at 4-5. And finally, the fact that the arbitration decision plaintiff fears has not been entered (and may never be entered) further demonstrates why his claims are unripe.

Moreover, even if the constitutional threshold for ripeness were met, prudential considerations would still weigh against considering plaintiff's claim at this time.  Because the arbitration award plaintiff fears has not yet been entered, there is no way to know whether that hypothetical award will infringe on his First Amendment rights or otherwise cause him hardship. To show hardship, a plaintiff must show that withholding review would result in "immediate and significant" hardship.  *Am. Petroleum*, 683 F.3d at 389 (internal quotation marks and citationsomitted).  Here, the facts show that no such hardship exists.  Plaintiff has continued to exercise his First Amendment rights regardless of the fact that a third party—the Campaign—is undertaking precisely the actions plaintiff asks the Court to forbid the defendants from taking.  *See* Compl., Prayer for Relief ¶¶ 1 (requesting that the Court declare that the defendants "may not enforce . . . any nondisclosure agreements that seek to constitutionally infringe upon [plaintiff's] First Amendment rights") & 2 (requesting that the Court enjoin the defendants from "initiating or pursuing further proceedings against the Plaintiff for publication of unclassified information . . . which he learned during his tenure as a federal employee").  For all these reasons, the Court should

dismiss plaintiff's complaint as unripe.

### III. THE RELEVANT FACTORS WEIGH STRONGLY AGAINST THE COURT EXERCISING JURISDICTION OVER PLAINTIFF'S DECLARATORY JUDGMENT ACT CLAIM.

Finally, the Court should also dismiss plaintiff's claim using its discretion to decline jurisdiction under the Declaratory Judgment Act, the principal basis for plaintiff's suit. The Act provides, in relevant part, that "[i]n a case of actual controversy within its jurisdiction," a "court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). As the D.C. Circuit has explained, the Declaratory Judgment Act "settle[s] legal rights and remove[s] uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships." *Am. Fed'n of Gov't Emps. v. O'Connor*, 747 F.2d 748, 759 (D.C. Cir. 1984) (internal quotation marks and citations omitted).

Claims brought under the Declaratory Judgment Act must stem from an "actual controversy," and in determining whether a claim meets this requirement, a court asks "whether the facts alleged, under the circumstances, show that there is a substantial [conflict], between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273 (1941). If one or both of the parties have acted so as to make litigation "imminent" and "inevitable" absent a declaration, then a declaratory judgment is appropriate. Wright & Miller, 10B Federal Practice and Procedure § 2757 (4th ed. 2013). But even if there is an actual controversy, and the plaintiff has standing to file suit for a declaratory judgment, district courts retain discretion to decline to exercise jurisdiction or provide declaratory relief under the Declaratory Judgment Act. *See Wilton,*

515 U.S. at 288 (noting that the Declaratory Judgment Act "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants"); *see also ACLU Found. of S. Cal. v. Barr*, 952 F.2d 457, 466 (D.C. Cir. 1991) ("The Declaratory Judgment Act, 28 U.S.C. § 2201, provides only that a district court 'may' declare the 'rights and other legal relations' of the parties, not that it must.  The decision whether to grant this relief is discretionary."); *Lovitky v. Trump*, 308 F. Supp. 3d 250, 259 (D.D.C. 2018) ("As the use of the word 'may' suggests, [the Declaratory Judgment Act] . . . is permissive, not mandatory: even when a suit otherwise satisfies subject matter jurisdictional prerequisites, the Act gives courts discretion to determine whether and when to entertain an action." (internal quotation marks and citations omitted)).

The D.C. Circuit has identified a "series of factors that are among the 'relevant' considerations in deciding whether to withhold jurisdiction over a claim brought under the DJA." *FiberLight*, 81 F. Supp. 3d at 114.  These factors are: (1) "whether [a declaration] would finally settle the controversy between the parties;" (2) "whether other remedies are available or other proceedings pending;" (3) "the convenience of the parties;" (4) "the equity of the conduct of the declaratory judgment plaintiff;" (5) "prevention of 'procedural fencing';" (6) "the state of the record;" (7) "the degree of adverseness between the parties;" and (8) "the public importance of the question to be decided."  *Hanes Corp. v. Millard,* 531 F.2d 585, 591 n.4 (D.C. Cir. 1976) (citing 10 Wright & Miller, Federal Practice and Procedure § 2759 (1973)).

Even if this court had subject-matter jurisdiction over plaintiff's claims against the United States and the President in his official capacity, the majority of the D.C. Circuit's factors weigh heavily against exercising jurisdiction under the DJA.  First, as to the availability of other remedies (factor (2)), an arbitration proceeding is pending, and arbitration may provide plaintiff with the remedies he seeks here, in the forum in which he contractually agreed to resolve these issues.  *See*

Compl. ¶ 21; Ex. A at 4; *see POM Wonderful LLC v. F.T.C.*, 894 F. Supp. 2d 40, 44 (D.D.C. 2012) (declining jurisdiction under the Declaratory Judgment Act where "overlapping proceedings are pending" and, although not identical to the declaratory judgment action, such proceedings are "perfectly capable" of resolving the questions raised under the Declaratory Judgment Act). Next, as to the equity of plaintiff's conduct (factor (4)), and the avoidance of procedural fencing (factor (5)), plaintiff is using this lawsuit to "preempt" the arbitration proceeding to which he contractually agreed claims should be submitted. *See* Ex. A at 4; *see also FiberLight*, 81 F. Supp. 3d at 115-16. As to the public importance of the question to be decided (factor (8)), Wright & Miller have noted that "courts particularly are reluctant to resolve important questions of public law in a declaratory action." 10B Wright & Miller, Federal Practice and Procedure § 2759 (4th ed. 2013). Plaintiff's allegations that the defendants, "for the first time ever through the use of private surrogates, [are] seeking to unconstitutionally censor and punish a former federal employee for disclosing unclassified information outlining what he saw and observed during his [federal employment]," Compl. ¶ 28, certainly seems to raise a question of first impression. *Accord FiberLight*, 81 F. Supp. 3d at 116 (finding fact that allegations "raise . . . significant questions of law" with far-reaching implications weighs against the exercise of jurisdiction under the Declaratory Judgment Act). And "[t]he final factor that indicates that this Court should decline jurisdiction is the fact that [plaintiff] appears to be seeking to establish an 'anticipatory defense'" against the Campaign's arbitration claim. *Id.* Just as in *FiberLight*, this combination of factors "strongly suggest[s] that [plaintiff] has moved deftly to invoke the Declaratory Judgment Act in the context of the instant case in order to engage in 'a disorderly race to the courthouse,' and for this reason, too, this Court should decline the invitation to declare a winner." *Id.* (quoting *Hanes Corp.*, 531 F.2d at 593); *see also POM Wonderful*, 894 F. Supp. 2d at 45 (noting that "[t]o the extent that [the plaintiff] is

seeking, in the current action, to resolve a defense, this court may decline to exercise jurisdiction to hear the action").  The Court should decline to hear plaintiff's claim and dismiss the complaint.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court dismiss the complaint with prejudice.


Dated:  April 25, 2019                                          Respectfully submitted,

                                                                JOSEPH H. HUNT
                                                                Assistant Attorney General

                                                                JAMES M. BURNHAM
                                                                Deputy Assistant Attorney General

                                                                CHRISTOPHER R. HALL
                                                                Assistant Director
                                                                Civil Division, Federal Programs Branch

                                                                /s/ Julie Straus Harris
                                                                JULIE STRAUS HARRIS (DC Bar # 1021928)
                                                                Trial Attorney
                                                                United States Department of Justice
                                                                Civil Division, Federal Programs Branch
                                                                1100 L Street NW, Room 11514
                                                                Washington, D.C. 20005
                                                                Tel: (202) 353-7633
                                                                Fax: (202) 616-8470
                                                                E-mail: julie.strausharris@usdoj.gov

                                                                *Counsel for Defendants*