**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CLIFTON DAVID SIMS | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action 19-345 (CKK) |
| | * | |
| DONALD J. TRUMP, | * | |
| <u>et al.</u> | * | |
| | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**
**<u>IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

# Table of Contents

FACTUAL BACKGROUND ........................................................................................ 2

ARGUMENT ........................................................................................................... 3

STANDARD OF REVIEW .................................................................................... 3

THE ARBITRATION PROVISION OF MR. SIMS' NDA WITH THE TRUMP
CAMPAIGN DOES NOT PRECLUDE THIS COURT FROM SEPARATELY
ADJUDICATING HIS CONSTITUTIONAL CLAIMS AGAINST THE
DEFENDANTS ................................................................................................... 4

The Defendants Are Not Signatories To The NDA And Cannot Invoke Its
Arbitration Provisions Against Mr. Sims ..................................................... 4

Even If This Court Concludes The Defendants Can Invoke The Arbitration
Provision as Non-Signatories, Arbitration Is An Improper Forum For Resolution Of
Mr. Sims' First Amendment Constitutional Claim........................................ 8

THIS COURT RETAINS SUBJECT-MATTER JURISDICTION OVER MR. SIMS'
CLAIMS ......................................................................................................... 12

Sovereign Immunity Has Been Waived By Defendants............................ 12

President Trump Is Not Immune From Injunctive Or Declaratory Relief................ 14

Mr. Sims Has More Than Sufficiently Demonstrated The Existence Of A
Cognizable Injury That Provides Standing ................................................ 18

Mr. Sims' Claim Does Not First Require A Determination From The Arbitrator In
Order To Establish Ripeness...................................................................... 21

THIS COURT WOULD ALSO BE WITHIN ITS DISCRETION TO EXERCISE
JURISDICTION OVER MR. SIMS' DECLARATORY JUDGMENT CLAIM ........ 24

CONCLUSION.................................................................................................... 27

# Table of Authorities

Cases

14 Penn Plaza LLC v. Pyett, 556 U.S. 247 (2009) ............................................................ 8

Abbot Labs. v. Gardner, 387 U.S. 136 (1967).................................................................. 22

Action for Children's Television v. FCC, 59 F.3d 1249 (D.C. Cir. 1995) ...................... 23

Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974) ................................................. 8-9

AT&T Techs., Inc. v. Commc'ns Workers of Am., ............................................................ 5

AT&T Corp. v. FCC, 349 F.3d 692 (D.C. Cir. 2003)....................................................... 23

Baker v. Carr, 369 U.S. 186 (1962) ................................................................................. 15

Barrentine v. Arkansas–Best Freight System, Inc., 450 U.S. 728 (1981) ......................... 9

Bd. of Airport Comm'rs v. Jews for Jesus, 482 U.S. 569 (1987).................................... 20

Blumenthal v. Trump, 2019 U.S. Dist. LEXIS 72431 (D.D.C. Apr. 30, 2019)............... 16

Boardley v. Dep't of Interior, 615 F.3d 508 (D.C. Cir. 2010)......................................... 19

Boumediene v. Bush, 553 U.S. 723 (2008) ...................................................................... 16

Cablevision Sys. Corp. v. FCC, 649 F.3d 694 (D.C. Cir. 2011)...................................... 23

CAMP Legal Def. Fund, Inc. v. City of Atlanta, 451 F.3d 1257 (11th Cir. 2006)........... 19

Chamber of Commerce v. FEC, 69 F.3d 600 (D.C. Cir. 1995) .................................... 21-22

Chamber of Commerce v. Reich, 74 F.3d 1322 (D.C. Cir. 1996) .................................... 13

Chemical Waste Management, Inc. v. EPA, 869 F.2d 1526 (D.C. Cir. 1989) ................. 24

Chicago Teachers Union, Local No. 1 v. Hudson, 475 U.S. 292 (1986).......................... 11

Ciba-Geigy Corp. v. EPA, 801 F.2d 430 (D.C. Cir. 1984)............................................... 22

Cirelli v. Town of Johnstown Sch. Dist., 888 F. Supp. 13 (D.R.I. 1995)......................... 10

Clapper v. Amnesty Int'l USA, 568 U.S. 398 (2013)........................................................ 18

Clark v. Library of Cong., 750 F.2d 89 (D.C. Cir. 1984) ................................................. 13

Comm. on the Judiciary v. Miers, 558 F. Supp. 2d 53 (D.D.C. 2008) ............................ 25

CREW v. Trump, 302 F. Supp. 3d 127 (D.D.C. 2018) ................................................ 15-16

District of Columbia v. Trump, 291 F. Supp. 3d 725 (D. Md. 2018) .............................. 16

Doe v. Trump, 319 F. Supp. 3d 539 (D.D.C. 2018) ........................................................ 18

DSMC, Inc. v. Convera Corp., 273 F. Supp. 2d 14 (D.D.C. 2002) .................................... 7

E.E.O.C. v. Waffle House, Inc., 534 U.S. 279 (2002) ........................................................ 5

Fiberlight, LLC v. Amtrak, 81 F. Supp. 3d 93 (D.D.C. 2015) .................................... 24-25

Franklin v. Massachusetts, 505 U.S. 788 (1992) ............................................................. 17

Get Outdoors II, LLC v. City of San Diego, Cal., 506 F.3d 886 (9th Cir. 2007) ............. 19

Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991) .......................................... 9

Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79 (2000) ........................................... 3

Halperin v. Kissinger, 606 F.2d 1192 (D.C. Cir. 1979) .................................................... 16

Hanes Corp. v. Millard, 531 F.2d 585 (D.C. Cir. 1976) .............................................. 25-26

Heffron v. Int'l Soc. For Krishna Consciousness, Inc., 452 U.S. 640 (1981) ................. 20

Hohri v. United States, 782 F.2d 227 (D.C. Cir. 1986) ..................................................... 4

Hudson v. City of Riviera Beach, 982 F. Supp. 2d 1318 (S.D. Fla. 2013) ................... 9-10

Int'l Refugee Assistance Project v. Trump, 857 F.3d 554 (4th Cir. 2017) ................. 16-17

J. Roderick MacArthur Found. v. FBI, 102 F.3d 600 (D.C. Cir. 1996) ....................... 20-21

Jangjoo v. Broad Bd. of Governors, 244 F. Supp. 3d 160 (D.D.C. 2017) ........................ 12

Johnson v. Robison, 415 U.S. 361 (1974) ......................................................................... 9

Kelleher v. Dream Catcher, L.L.C., 278 F. Supp. 3d 221 (D.D.C. 2017) ......................... 7

Knight First Amendment Institute at Columbia University v. Trump, 302 F.Supp.3d 541
    (S.D.N.Y. 2018) ............................................................................................................ 16

Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750 (1988) ................................................ 19

Lane v. Franks, 573 U.S. 228 (2014) .............................................................................. 11

Lovitsky v. Trump, 308 F. Supp. 3d 250 (D.D.C. 2018).................................................. 18

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ....................................................... 4

Marbury v. Madison, 5 U.S. 137 (1803)........................................................................... 11

McDonald v. West Branch, 466 U.S. 284 (1984)......................................................... 8, 10

McGehee v. Casey, 718 F.2d 1137 (D.C. Cir. 1983)........................................................ 14

Miller v. City of Cincinnati, 622 F.3d 524 (6th Cir. 2010)............................................... 19

Mississippi v. Johnson, 71 U.S. 475 (1866) .................................................................... 15

Mitsubishi Motors Corp. v. Soler Chrysler—Plymouth, Inc., 473 U.S. 614 (1985) ...... 5, 9

Monsanto Co. v. Geerston Seed Farms, 561 U.S. 139 (2010).......................................... 18

Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau, 979 F. Supp. 2d 104 (D.D.C 2013)
................................................................................................................................. 25

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983) .................... 8

Mountain States Tel. & Tel. Co. v. FCC, 939 F.2d 1035 (D.C. Cir. 1991)...................... 23

Naegele v. Albers, 110 F. Supp. 3d 126 (D.D.C. 2015) .................................................... 4

Nat'l Ass'n of Home Builders v. Army Corps of Eng'rs, 417 F.3d 1272 (D.C. Cir. 2005)
................................................................................................................................. 22

Nat'l Mining Ass'n v. Fowler, 324 F.3d 752 (D.C. Cir. 2003) ........................................ 23

Nat'l Treasury Employees Union v. Nixon, 492 F.2d 587 (D.C. Cir. 1974).............. 15, 17

Navegar, Inc. v. United States, 103 F.3d 994 (D.C. Cir. 1997)........................................ 19

New York State Teamsters Conference Pension & Ret. Fund v. McNicholas Transp. Co.,
658 F. Supp. 1469 (N.D.N.Y. 1987)............................................................................ 10

New York Times v. Sullivan, 376 U.S. 254 (1964)........................................................... 11

Newdow v. Roberts, 603 F.3d 1002 (D.C. Cir. 2010) ................................................. 16-17

Nixon v. Sirica, 487 F.2d 700 (D.C. Cir. 1973)...................................................... 16

Ohio v. Wyandotte Chemicals Corp., 401 U.S. 493 (1971) ............................................ 15

Overby v. Nat'l Ass'n of Letter Carriers, 595 F.3d 1290 (D.C. Cir. 2010)........................ 6

Philip Morris USA Inc. v. FDA, 202 F. Supp. 2d 31 (D.D.C. 2016) .............................. 22

POM Wonderful LLC v. FTC, 894 F. Supp. 2d 40 (D.D.C. 2012) .................................. 25

Pub. Affairs Press v. Rickover, 369 U.S. 111 (1962) ......................................... 24

Riley v. BMO Harris Bank, N.A., 61 F. Supp. 3d 92 (D.D.C. 2014) ................................ 8

Saget v. Trump, 2019 U.S. Dist. LEXIS 63773 (E.D.N.Y. Apr. 11, 2019)..................... 16

Sakyi v. Estee Lauder Cos., 308 F. Supp. 3d 366 (D.D.C. 2018)................................ 3, 7

Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18 (D.D.C. 2000) ................. 4

Shaffer v. D.I.A., 102 F. Supp. 3d 1 (D.D.C. 2015) ......................................... 14

Snodgrass v. Doral Dental of Tenn., 2008 U.S. Dist. LEXIS 80619 (M.D. Tenn. Oct. 9, 2008) ............................................................................................... 4

Sparrow v. United Air Lines, Inc., 216 F.3d 1111 (D.C. Cir. 2000) ...................... 4, 6, 21

Steffel v. Thompson, 415 U.S. 452 (1974) ...................................................... 19

Stillman v. CIA et al., 319 F.3d 546 (D.C. Cir. 2003)...................................... 14

Swan v. Clinton, 100 F.3d 973 (D.C. Cir. 1996) ......................................... 16-17

Swish Mktg., Inc. v. FTC, 669 F. Supp. 2d 72 (D.D.C. 2009) ................................ 25-26

Taylor v. Fannie Mae, 839 F. Supp. 2d 259 (D.D.C. 2012) ............................... 5

Tinder v. Pinkerton Sec., 305 F.3d 728 (7th Cir. 2002) ................................... 4

Toledano v. O'Connor, 501 F. Supp. 2d 127 (D.D.C. 2007)............................... 9

Trudeau v. FTC, 456 F.3d 178 (D.C. Cir. 2006) ........................................ 13

United States v. Mitchell, 463 U.S. 206 (1983)........................................ 12

United States v. Nixon, 418 U.S. 683 (1974) ......................................................... 11-12, 14

United States v. Rostenkowski, 59 F.3d 1291 (D.C. Cir. 1995) ........................................ 12

Van Wagner Boston, LLC. v. Davey, 770 F.3d 33 (1st Cir. 2014) ................................... 19

Virginia v. American Booksellers Ass'n, 484 U.S. 383 (1988) ....................................... 21

Wallace v. Suffolk County Police Dep't, 809 F. Supp. 2d 73 (E.D.N.Y. 2011) .............. 10

Washington Legal Found. v. Kessler, 880 F. Supp. 26 (D.D.C. 1995) ............................ 22

Webster v. Doe, 486 U.S. 592 (1988) .................................................................................. 9

Whitmore v. Arkansas, 495 U.S. 149 (1990) ..................................................................... 18

Wilson v. CIA, 586 F.3d 171 (2d. Cir. 2009) .................................................................... 14

Wilton v. Seven Falls Co., 515 U.S. 277 (1995) ............................................................... 24


## Statutes

28 U.S.C. § 2201 ......................................................................................................... 12, 19

28 U.S.C. § 1331 .............................................................................................................. 12


## Other Authorities

*Team of Vipers: My 500 Extraordinary Days in the Trump White House* (St. Martin's
   Press, 2019)("*Team of Vipers*") .......................................................... 1-3, 17, 19, 20, 27


## Rules

Federal Rules of Civil Procedure 12(b)(1) ......................................................................... 4

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CLIFTON DAVID SIMS | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil Action 19-345 (CKK) |
| | * | |
| DONALD J. TRUMP, <u>et al.</u> | * | |
| | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**<u>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

**(ORAL ARGUMENT REQUESTED)**

Plaintiff Clifton David Sims ("Mr. Sims") brought this action to vindicate his rights primarily pursuant to the First Amendment to the U.S. Constitution; rights regarding which federal defendants Donald J. Trump ("President Trump") and the United States of America (hereinafter referred to jointly as "Defendants") are seeking to deprive him.

Mr. Sims, a former U.S. Government employee in the administration of President Trump, wrote a book, <u>*Team of Vipers: My 500 Extraordinary Days in the Trump White House*</u> (St. Martin's Press, 2019)("*Team of Vipers*"), which predominantly detailed his time in the White House. Because of the unconstitutional actions taken by the Defendants (and President Trump in particular), Mr. Sims has been forced to bring this litigation to prevent the infringement of his free speech rights, particularly through a subterfuge enforcement of a nondisclosure agreement by President Trump's presidential political campaign ("Trump Campaign") in private arbitration proceedings. This action, taken at the direction and on behalf of President Trump and/or his senior governmental staff, is nothing less than a retaliatory punishment of Mr. Sims for writing *Team of Vipers*

and including information that was construed as unflattering to some inside the Trump Administration.

The Defendants now move to dismiss this action, claiming that it is precluded due to the existence of the separate arbitration proceeding, that Mr. Sims failed to sufficiently demonstrate subject-matter jurisdiction exists, and that this Court should exercise its discretion in declining to adjudicate Mr. Sims' claims.

For the reasons set forth in detail below, the Defendants' arguments should be rejected and this case should be permitted to proceed.

## **FACTUAL BACKGROUND**

The facts of the present action were outlined in detail in the Complaint, see Complaint at ¶¶13-28 (Dkt. No. 1)(filed February 11, 2019)("Compl."), and the Defendants largely repeated that same information in their filing. See Memorandum in Support of Defendants' Motion to Dismiss at 2-5 (Dkt. No. 8-1)(filed April 25, 2019) ("Defs' Memo"). Mr. Sims has no desire to burden this Court with a recitation of information both he and the Defendants have already provided, and will confine the information below only to those points that require highlighting here.

Mr. Sims was hired by the Trump Campaign in September 2016, and he signed a nondisclosure agreement ("NDA") as part of his work. Compl. at ¶13. He later served as Special Assistant to the President from January 20, 2017, until he left the White House in May 2018. Id. at ¶14. The then-upcoming publication of *Team of Vipers* was announced via press release, with a publication date set for January 29, 2019. All of the initial excerpts published by various media outlets in the leadup to the publication of *Team of Vipers* dealt exclusively with matters regarding which Mr. Sims learned or

observe during his federal service. Compl. at ¶¶16, 22. At no time prior to the public

release of *Team of Vipers* on January 29, 2019, was any action taken against Mr. Sims,

either by the U.S. Government or the Trump Campaign. Id. at ¶¶15-17.

Within hours of the public release of *Team of Vipers*, however, President Trump

publicly attacked Mr. Sims' book via Twitter and noted that he (Mr. Sims) had signed a

nondisclosure agreement. Compl. at ¶18. Less than twenty minutes after President

Trump's tweet, Michael Glassner, the Trump Campaign Chief Operating Officer, tweeted

that the Trump Campaign was preparing to file suit against Mr. Sims. Id. at ¶20. On

January 31, 2019, the Trump Campaign publicly disclosed that it had filed a Demand for

Arbitration ("Demand") against Mr. Sims for purported breaches of his NDA. The

Demand seeks monetary damages, as well as other relief, for disparaging remarks and

release of "confidential" information pertaining to President Trump, all of which was

derived from Mr. Sims' time as a federal employee. Id. at ¶¶21-22.

## ARGUMENT

## I.  STANDARD OF REVIEW

Written agreements to arbitrate disputes arising out of transactions involving

commerce shall be valid, irrevocable and enforceable, save upon such grounds as exist at

law or in equity for the revocation of any contract. See Sakyi v. Estee Lauder Cos.,

308 F. Supp. 3d 366, 374 (D.D.C. 2018)(internal quotations omitted). The party resisting

arbitration bears the burden of proving that the claims at issue are unsuitable for

arbitration. Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91 (2000). See also

Sakyi, 308 F. Supp. 3d at 375 ("Accordingly, '[t]he party opposing arbitration must

identify a triable issue of fact concerning the existence of the agreement in order to obtain

a trial on the merits of the contract."), quoting Tinder v. Pinkerton Sec., 305 F.3d 728,

735 (7th Cir. 2002).

In evaluating a motion to dismiss under Rule 12(b)(1), the Court must "treat the

complaint's factual allegations as true … and must grant plaintiff 'the benefit of all

inferences that can be derived from the facts alleged.'" Naegele v. Albers, 110 F. Supp.

3d 126, 139 (D.D.C. 2015), quoting Sparrow v. United Air Lines, Inc., 216 F.3d 1111,

1113 (D.C. Cir. 2000). Furthermore, the court is not limited to the allegations of the

complaint, see Hohri v. United States, 782 F.2d 227, 241 (D.C. Cir. 1986), and can

consider "such materials outside the pleadings as it deems appropriate the resolve the

question [of] whether it has jurisdiction to hear the case." See Scolaro v. D.C. Bd. of

Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000). Ultimately, however, the

plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.

See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

## II. THE ARBITRATION PROVISION OF MR. SIMS' NDA WITH THE TRUMP CAMPAIGN DOES NOT PRECLUDE THIS COURT FROM SEPARATELY ADJUDICATING HIS CONSTITUTIONAL CLAIMS AGAINST THE DEFENDANTS

### A. The Defendants Are Not Signatories To The NDA And Cannot Invoke Its Arbitration Provisions Against Mr. Sims

The NDA that Mr. Sims signed, and which does include an arbitration provision, was

with the Trump Campaign, not with the federal Defendants. See Compl. at ¶13. The

Defendants do not claim to be parties to the NDA that Mr. Sims signed with the Trump

Campaign, nor could they make such an argument, as the NDA was drafted and signed

before President Trump even won the 2016 presidential election (let alone taken the Oath

of Office). Cf. Snodgrass v. Doral Dental of Tenn., 2008 U.S. Dist. LEXIS 80619, *8

(M.D. Tenn. Oct. 9, 2008)(rejecting argument that arbitration should be compelled for constitutional claim when contractual agreement does not reflect that parties ever contemplated submission of constitutional claims to arbitration).

The Defendants rely heavily on the Federal Arbitration Act for the premise that this Court should not entertain this dispute. Defs' Memo at 1, 6-7. But because that Act is "at bottom a policy guaranteeing the enforcement of private contractual arrangements," E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 294 (2002), quoting Mitsubishi Motors Corp. v. Soler Chrysler—Plymouth, Inc., 473 U.S. 614, 625 (1985), the courts must first "look first to whether the parties agreed to arbitrate a dispute." See Waffle House, Inc., 534 U.S. at 294 (internal citation omitted). "It goes without saying that a contract cannot bind a nonparty." Id.; see also AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986)("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (citation omitted)(internal quotation marks omitted); Taylor v. Fannie Mae, 839 F. Supp. 2d 259, 261 (D.D.C. 2012)("[I]t is for the courts to decide whether the parties are bound by a given arbitration clause.").

To navigate around this glaring deficiency, the Defendants instead misstate the nature of Mr. Sim's claims, claiming that he has argued in his Complaint that the Trump Campaign has infringed his First Amendment rights. See Defs' Memo at 7. This is simply not what Mr. Sims has argued at all. Mr. Sims very clearly alleged that the Demand for Arbitration was filed by the Trump Campaign at the behest of – and at least upon implicit, if not explicit, instructions from – President Trump himself in his official

government capacity. See Compl. at ¶¶18-20, 26.[1] Mr. Sims further outlined how the

Defendants are seeking to unconstitutionally circumvent existing First Amendment case

law regarding prior restraint of former federal employees by having the Trump Campaign

act as a surrogate and take action against Mr. Sims on the Defendants' behalf and, most

importantly, almost (if not) exclusively regarding information that Mr. Sims learned

about or observed during his time in federal service. Id. at ¶¶10, 28. The present case is

not litigation against the Trump Campaign: it is litigation by Mr. Sims against President

Trump, in his official capacity, and the U.S. Government for the illegitimate and

unconstitutional use of the Trump Campaign as a cutout to infringe upon Mr. Sims'

First Amendment rights. The Defendants cannot have it both ways. If they seek to

enforce arbitration, they must admit to being a party to the NDA. Of course, if that is the

case then the Defendants are acknowledging governmental action to infringe upon

Mr. Sims' protected First Amendment rights.[2]

Regardless, Mr. Sims never entered into a contract with either of the federal

defendants that would require submission to arbitration to vindicate his First Amendment

rights to publish unclassified information learned during his federal service. The

Defendants have not argued – and could not argue – that the doctrine of equitable

---

[1] Mr. Sims is not precluding the possibility discovery might later reveal subordinate officials were involved in President Trump's ultimate action in his official capacity. However, the factual allegations as currently outlined in the Complaint have to be accepted as true for purposes of the present motion, see Sparrow, 216 F.3d at 1113, and the Government has provided no factual basis to dispute the allegation that President Trump himself issued the instructions to the Trump Campaign.

[2] That said, the same is not the case for Mr. Sims, who can properly argue alternative theories. See Overby v. Nat'l Ass'n of Letter Carriers, 595 F.3d 1290, 1297 (D.C. Cir. 2010). Either way, if the Defendants are involved in this dispute than this Court has jurisdiction in order to protect Mr. Sims' constitutional rights.

estoppel should apply to them as non-signatories on the basis that the claims alleged against them are intertwined with the NDA Mr. Sims signed with the Trump Campaign. See Kelleher v. Dream Catcher, L.L.C., 278 F. Supp. 3d 221, 225 (D.D.C. 2017); see also Sakyi, 308 F. Supp. 3d at 385 (applying equitable estoppel only because plaintiff asserted exact same claims and operative set of facts); Fox v. Computer World Servs. Corp., 920 F. Supp. 2d 90, 103 (D.D.C. 2013)(compelling arbitration when claims against signatory and non-signatory defendants identical); but see DSMC, Inc. v. Convera Corp., 273 F. Supp. 2d 14, 29-30 (D.D.C. 2002)(refusing to compel arbitration with non-signatory because claims not inextricably intertwined and distinct with contractual obligations to signatory).

Any commonalities in the facts of the present case compared to that of the ongoing but separate arbitration proceeding are simply insufficient as a matter of law to justify application of equitable estoppel. In fact, contrary to the Defendants' assertions, see Defs' Memo at 2, Mr. Sims is not trying to circumvent or avoid arbitration. Indeed, he is actively engaged in and defending himself in the arbitration proceeding. Compl. at ¶22. No attempt has been made to set that proceeding aside.

Nor is Mr. Sims basing his claims in the present case in reliance upon any contractual rights he may have under the NDA with respect to the Trump Campaign. Rather, he is alleging deprivation of his First Amendment rights – something that is only appropriately brought against government actors such as the Defendants and not against a private entity such as the Trump Campaign – with respect to information he learned while a federal employee. Compl. at ¶¶10, 28. The present case does not outright seek to address distinct and separate issues that may be decided in the arbitration proceeding, such as whether the

NDA can lawfully be enforced with respect to information Mr. Sims learned prior to his

federal service. Those arguments will no doubt be addressed in the arbitration

proceeding. That this results in piecemeal resolution of different claims in two different

forums is of no legal significance. See Moses H. Cone Mem'l Hosp. v. Mercury Constr.

Corp., 460 U.S. 1, 20 (1983).[3]

**B. Even If This Court Concludes The Defendants Can Invoke The Arbitration Provision As Non-Signatories, Arbitration Is An Improper Forum For Resolution Of Mr. Sims' First Amendment Constitutional Claim**

The Supreme Court has previously stated that arbitration cannot provide an adequate

substitute for a judicial proceeding in protecting an individual's federal constitutional

rights, and it has been skeptical of any notion that arbitration should have a preclusive

effect upon an individual's ability to separately pursue a federal statutory or

constitutional claim in district court. See McDonald v. West Branch, 466 U.S. 284, 290-

292 (1984); see also 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 268 (2009)("In the

Court's view, 'the resolution of [] constitution issues is a primary responsibility of

courts…'"), quoting Alexander v. Gardner-Denver Co., 415 U.S. 36, 57 (1974);

---

[3] Nor, with all due respect, does the existence of the ongoing arbitration bring the present case in line with this Court's analysis in Riley v. BMO Harris Bank, N.A., 61 F. Supp. 3d 92, 99 (D.D.C. 2014). In Riley, this Court concluded that the claims in federal court against a non-signatory bank defendant was sufficiently intertwined with arbitration claims involving third-party lenders, as both sets of proceedings were contingent on the existence of the same underlying loan agreements. Id. at 99-102. Conversely, in the present case the NDA was merely the tool that the Defendants (who were not reasonably foreseen as being beneficiaries of the NDA's restriction at its inception) chose to utilize in this particular circumstance by way of having the Trump Campaign act as their surrogate and pursue arbitration on the Defendant's behalf. See Compl. at ¶¶10, 26, 28. The bases for Mr. Sims' claims in the present case are not contingent on the existence of the NDA, and rather are premised on his independent constitutional rights under the First Amendment as a former federal employee. Id. at ¶¶10, 30-32.

Barrentine v. Arkansas–Best Freight System, Inc., 450 U.S. 728, 745-56 (1981)(rejecting preclusive effect of arbitration on suit under Fair Labor Standards Act); Alexander, 415 U.S. at 56-57 (finding Title VII racial discrimination claim not precluded by previous arbitration decision based on same facts).

Even where the courts have permitted arbitration of disputes tangential to resolution of contractual matters, it has only been done in the context of statutory claims and even then, only because Congress clearly expressed its intent to permit such an action. See, e.g., Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991)(noting "[a]lthough all statutory claims may not be appropriate for arbitration, [h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue") (citation omitted)(internal quotation marks omitted)); see also Toledano v. O'Connor, 501 F. Supp. 2d 127, 147 (D.D.C. 2007)("It is by now clear that [federal] statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the [Federal Arbitration Act], at least 'so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum.'"), quoting Mitsubishi Motors Corp., 473 U.S. at 637 (alteration in original)(internal citations omitted).

The courts have not been willing to do the same with constitutional claims. See Webster v. Doe, 486 U.S. 592, 603 (1988)("[W]here Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear."), citing Johnson v. Robison, 415 U.S. 361, 373-374 (1974); see also Hudson v. City of Riviera Beach, 982 F. Supp. 2d 1318, 1338 (S.D. Fla. 2013)("Because contractual rights, on the one hand, and statutory and constitutional rights, on the other, 'have legally independent

origins are equally available to the aggrieved employee,' [plaintiff's] submission to the grievance procedure does not preclude [plaintiff] from raising the alleged violations of his constitutional rights in federal court.")(internal citations omitted); Wallace v. Suffolk County Police Dep't, 809 F. Supp. 2d 73, 87 n. 14 (E.D.N.Y. 2011)(notwithstanding decisions issued in years since McDonald that reconsidered issue of competence of arbitrator to handle complex legal issues, lower courts still not willing to afford preclusive effect to arbitrator proceedings implicating First Amendment rights); Cirelli v. Town of Johnstown Sch. Dist., 888 F. Supp. 13, 15 (D.R.I. 1995)(declining to find First Amendment dispute had to be arbitrated under existing grievance procedure); New York State Teamsters Conference Pension & Ret. Fund v. McNicholas Transp. Co., 658 F. Supp. 1469, 1473 (N.D.N.Y. 1987)(noting "constitutional questions must be resolved by the courts rather than by arbitrators"), aff'd, 848 F.2d 20 (2d Cir. 1988).

To the best of the undersigned's understanding, no court within this Circuit has ever directly adjudicated this question. Mr. Sims respectfully submits that this Court would be well within its discretion, especially based on Supreme Court requirement for clear congressional preclusion, to follow the many decisions issued by other courts in declining to find that constitutional claims such as the one raised by Mr. Sims are appropriately addressed through an arbitration proceeding with a separate, private entity.

It would be particularly appropriate for this Court to do so in the present case given that Mr. Sims' claim is based upon a violation of his First Amendment rights, in that he argues his critical speech regarding the Trump Administration is being challenged. As the Supreme Court emphasized in New York Times v. Sullivan, "we consider this case against the background of a profound national commitment to the principle that debate on

public issues should be uninhibited, robust, and wide-open, and that it may well include

vehement, caustic, and sometimes unpleasantly sharp attacks on government and public

officials." 376 U.S. 254, 270-71 (1964)(citations omitted).

Furthermore, the Supreme Court has also noted:

> [Procedural] safeguards often have a special bite in the First Amendment
> context. Commentators have discussed the importance of procedural
> safeguards in our analysis of obscenity, overbreadth, vagueness, and
> public forum permits. The purpose of these safeguards is to insure that the
> government treads with sensitivity in areas freighted with First
> Amendment concerns.

Chicago Teachers Union, Local No. 1 v. Hudson, 475 U.S. 292, 304 n.12 (1986)(internal

citations omitted). There is special value in speech by public employees in particular,

"because those employees gain knowledge of matters of public concern through their

employment" and are uniquely qualified to comment on "matters concerning government

policies that are of interest to the public at large." See Lane v. Franks, 573 U.S. 228, 240

(2014). This Court should decline to permit such sensitive constitutional questions to be

handled by an arbitrator in an action brought by a private actor.

Finally, the authority of this Court to pass judgment on constitutional questions is also

constitutionally grounded, deriving from Article III itself. It is fundamental that "it is

emphatically the province and duty of the judicial department to say what the law

is." Marbury v. Madison, 5 U.S. 137, 177 (1803). As the Supreme Court stated when

faced by the Executive Branch's claim of the nonjusticiability of executive privilege

in United States v. Nixon, "our system of government requires that federal courts on

occasion interpret the Constitution in a manner at variance with the construction given

the document by another branch." 418 U.S. 683, 704 (1974);

see also United States v. Rostenkowski, 59 F.3d 1291, 1306 (D.C. Cir. 1995)("Of course, under Article III of the Constitution the courts are the final arbiters of the law…"). Thus, given that the Judiciary does not take kindly to any claim by a coordinate branch of government that a court lacks the ability to determine whether an individual's constitutional rights have been infringed, certainly a private actor, i.e., arbitration proceeding, would and should be given even less weight.

## III. THIS COURT RETAINS SUBJECT-MATTER JURISDICTION OVER MR. SIMS' CLAIMS

### A. SOVEREIGN IMMUNITY HAS BEEN WAIVED BY DEFENDANTS

There is no dispute that the United States is generally immune to suit, absent an express waiver by Congress. See United States v. Mitchell, 463 U.S. 206, 212 (1983); see also Jangjoo v. Broad Bd. of Governors, 244 F. Supp. 3d 160, 170 (D.D.C. 2017)("So plaintiffs bear the burden of establishing that the government has waived its sovereign immunity.").

The Defendants argue that neither the Declaratory Judgment Act, nor 28 U.S.C. § 1331, constitute waivers of sovereign immunity, and that Mr. Sims' First Amendment claim does not either. See Defs' Memo at 11. This assertion is inherently flawed and without merit. Indeed, it was effectively rejected a mere five years ago by U.S. District Court Judge Ketanji Brown Jackson, whose analysis below is particularly informative:

> As an initial matter, Defendant is correct that neither Section 2201 nor Section 1331 of Title 28 provides an express waiver of sovereign immunity. But Defendant is wrong to argue that sovereign immunity bars the instant action because *Congress, through the Administrative Procedure Act ("APA"), has expressly waived sovereign immunity for suits such as this one*.

The relevant APA provision provides that:

> [a]n action in a court of the United States seeking relief other than
> money damages and stating a claim that an agency or an officer or
> employee thereof acted or failed to act in an official capacity or
> under color of legal authority shall not be dismissed nor relief
> therein be denied on the ground that it is against the United States
> or that the United States is an indispensable party.

5 U.S.C. § 702.  This section waives sovereign immunity with respect to suits for non-

monetary damages that allege wrongful action by an agency or its officers or employees,

and the instant lawsuit fits precisely those criteria. Z Street, Inc. v. Koskinen, 44 F. Supp.

3d 48, 63 (D.D.C. 2014)(internal citations omitted)(emphasis added); see also Trudeau v.

FTC, 456 F.3d 178, 187 (D.C. Cir. 2006) ("In sum, we hold that APA § 702's waiver of

sovereign immunity permits not only Trudeau's APA cause of action, but his

nonstatutory and First Amendment actions as well."); Chamber of Commerce v. Reich,

74 F.3d 1322, 1328 (D.C. Cir. 1996)(noting suit need not be brought pursuant to APA in

order to receive benefit of statute's sovereign immunity waiver); Clark v. Library of

Cong., 750 F.2d 89, 102 (D.C. Cir. 1984)(stating APA "eliminated the sovereign

immunity defense in virtually all actions for non-monetary relief against a U.S. agency or

officer acting in an official capacity.").[4]

Those are exactly the same type of circumstances in the present case. Mr. Sims

deliberately and explicitly limited this lawsuit only to non-monetary requests for relief.

See Compl., Prayer for Relief ¶¶1-2. Just like in Z Street, Mr. Sims is only seeking

declaratory and injunctive relief to prevent continued and further harm to his

---

[4] It is not necessary for there to be "final agency action" for purposes of determining that
sovereign immunity was waived. See Trudeau, 456 F.3d at 187.

First Amendment rights that was caused by the actions of the Defendants. See Compl. at ¶¶26, 28, 30, 33.

By virtue of the broad waiver of sovereign immunity, Congress deliberately and expressly provided for such actions through the APA. Therefore, Mr. Sims' First Amendment and Declaratory Judgment Act arguments against the United States are not barred[5].

## B. PRESIDENT TRUMP IS NOT IMMUNE FROM INJUNCTIVE OR DECLARATORY RELIEF

It is settled that the President is subject to judicial process in appropriate circumstances. See Clinton v. Jones, 520 U.S. 681, 703 (1997); see also United States v. Nixon, 418 U.S. 683, 706 (1974)("[N]either the doctrine of separation of powers , nor the need for confidentiality of high-level communications, without more, can sustain an absolute, unqualified Presidential privilege of immunity from judicial process under all circumstances."); United States v. Lee, 106 U.S. 196, 220 (1882)("No man in this country is so high that he is above the law.").

The Defendants claim that injunctive or declaratory relief against President Trump for actions taken in his official capacity requires judicial relief beyond that which this Court is authorized to provide. See Defs' Memo at 12-13. Significant case law, particularly within this Circuit, shows that proposition to be clearly erroneous.

---

[5] This case should be construed as no different from a prepublication review challenge. If former federal employees have the clear and well-established legal ability to challenge the U.S. Government's efforts to censor them, i.e., no immunity exists, then Mr. Sims most certainly is not barred from protecting his First Amendment rights from being infringed in this matter. See e.g., Wilson v. CIA, 586 F.3d 171 (2d. Cir. 2009); Stillman v. CIA et al., 319 F.3d 546 (D.C. Cir. 2003); McGehee v. Casey, 718 F.2d 1137 (D.C. Cir. 1983); Shaffer v. D.I.A., 102 F. Supp. 3d 1 (D.D.C. 2015).

The Defendants largely hang their proverbial hat on a case from more than 150 years ago: Mississippi v. Johnson, 71 U.S. 475, 499-500 (1866). However, this Court's brethren, District Court Judge Christopher R. Cooper ("Judge Cooper"), analyzed precedential case law a mere 15 months ago and held that the Government was biting off a bit more than it could chew with such a bold claim in its reliance upon Johnson. See CREW v. Trump, 302 F. Supp. 3d 127, 138 (D.D.C. 2018). While acknowledging that Johnson was limited only to the issue of injunctive relief, something the D.C. Circuit has indicated it views as implicating similar considerations as declaratory relief when discussing the judiciary's authority, Judge Cooper outlined how the D.C. Circuit has previously concluded courts retain the authority to issue declaratory judgments directly against the President of the United States. See CREW, 302 F. Supp. 3d at 139, citing Nat'l Treasury Employees Union v. Nixon, 492 F.2d 587, 615 (D.C. Cir. 1974). Judge Cooper further clarified that the analysis in Johnson was more appropriately viewed in the lens of the political question doctrine, not necessarily an issue of judicial authority. See CREW, 302 F. Supp. 3d at 139-140.[6]

It does not require a deep historical review of case law to find a myriad of examples in which courts have concluded they retain authority (when appropriate) to provide declaratory relief (and even injunctive relief) with respect to official actions of the President of the United States. A review of cases from just within the last 20 years – and, particularly, during the tenure of President Trump – provides more than enough evidence

---

[6] This view is supported by Supreme Court precedent suggesting the same. See Ohio v. Wyandotte Chemicals Corp., 401 U.S. 493, 496 (1971)(citing to Johnson in the context of embroiling the tribunal in "political questions"); see also Baker v. Carr, 369 U.S. 186, 225 n.52 (1962)(citing Johnson in the context of discussions about cases exemplifying nonjusticiable questions).

for this Court's consideration. See, e.g., Boumediene v. Bush, 553 U.S. 723, 771 (2008)(declaring President Bush's suspension of habeas corpus at Guantanamo Bay unconstitutional, and remanding for further proceedings to provide constitutional protections for detainees); Blumenthal v. Trump, 2019 U.S. Dist. LEXIS 72431, at *52-534 (D.D.C. Apr. 30, 2019)(enjoining President Trump from accepting emoluments in violation of Foreign Emoluments Clause of Constitution); Knight First Amendment Institute at Columbia University v. Trump, 302 F.Supp.3d 541, 578–580 (S.D.N.Y. 2018)(declaring President Trump violates First Amendment when he blocks Twitter users from @realDonaldTrump because of expressed political beliefs); District of Columbia v. Trump, 291 F. Supp.3d 725, 750–52 (D. Md. 2018)(enjoining President Trump from accepting emoluments in violation of Foreign and Domestic Emoluments Clauses of Constitution); Saget v. Trump, 2019 U.S. Dist. LEXIS 63773, at *224 (E.D.N.Y. Apr. 11, 2019)(enjoining President Trump from terminating Temporary Protected Status of Haitian nationals lawfully residing in United States).[7]

The Defendants' remaining citations, see Defs' Memo 12-13, citing Newdow v. Roberts, 603 F.3d 1002, 1013 (2010); Int'l Refugee Assistance Project v. Trump, 857 F.3d 554, 605 (4th Cir. 2017); and Swan v. Clinton, 100 F.3d 973, 976 n.1 (D.C. Cir. 1996), to distinguish this case from that lengthy history of case law is simply unavailing. The cases to which the Defendants cite either involve misleading dicta, see CREW,

[7] It is axiomatic that judicial precedents deeper into this Nation's history similarly have rejected the notion that the President is somehow beyond the reach of the courts. See Nixon v. Sirica, 487 F.2d 700, 709 (D.C. Cir. 1973)("There is not the slightest hint in any of the Youngstown opinions that the case would have been viewed differently if President Truman rather than Secretary Sawyer had been the named party."); see also Halperin v. Kissinger, 606 F.2d 1192, 1211 (D.C. Cir. 1979)("[P]residents are scarcely immune from judicial process.").

302 F. Supp. 2d at 139 n.6 (disputing assertion that <u>Newdow</u> stands for broad proposition that courts lack authority to submit President to declaratory relief by citing exactly that occurring in <u>Nat'l Treasury Emps. Union</u> and noting court in <u>Newdow</u> made no reference to ruling); <u>Swan,</u> 100 F.3d at 976-77 (noting granting injunctive relief against president is admittedly "extraordinary" but plurality opinion in <u>Franklin v. Massachusetts</u>, 505 U.S. 788, 802 (1992) did not directly decide issue and does not preclude courts from granting relief where appropriate), or misinterpretation of the breadth of the court's actual conclusion, <u>see</u> <u>Int'l Refugee Assistance Project</u>, 857 F.3d at 605-6 (noting that relief against President in form of injunction *can* be granted where appropriate but concluding not necessary to do so in particular case because enjoining subordinate government officers implementing orders sufficient).

The present case is readily distinguishable from past case law in which there were subordinate officers regarding whom it was more appropriate to enjoin, as there are no such individuals – as far as Mr. Sims is aware – that were involved or have been involved in the Defendants' actions other than President Trump himself. To the best of Mr. Sims' knowledge and understanding, it was the President, and the President alone, who issued the directive – in his official capacity as Commander-in-Chief and head of the Executive Branch – to the Trump Campaign to file the Demand for Arbitration against Mr. Sims for publishing information in *Team of Vipers* that almost (if not) exclusively deals with

Mr. Sims' time in federal service. See Compl. at ¶¶18-20, 22, 26, 28.[8]  There is no subordinate officer of the U.S. Government against whom relief would be more appropriately directed: the only officer involved is the President himself.[9]

### C. MR. SIMS HAS MORE THAN SUFFICIENTLY DEMONSTRATED THE EXISTENCE OF A COGNIZABLE INJURY THAT PROVIDES STANDING

To establish standing Mr. Sims must sufficiently demonstrate an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." See Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013), quoting Monsanto Co. v. Geerston Seed Farms, 561 U.S. 139, 149 (2010); see also Whitmore v. Arkansas, 495 U.S. 149, 158 (1990)(threatened injury must be "certainly impending).

---

[8] This specific factual issue will no doubt be something that will be inquired into and ultimately clarified in the context of discovery.

[9] Although the Government does not cite to them in its supporting Memorandum of Law, the undersigned are aware of two recent rulings by this Court that arguably are relevant to this discussion, see Lovitsky v. Trump, 308 F. Supp. 3d 250 (D.D.C. 2018) and Doe v. Trump, 319 F. Supp. 3d 539 (D.D.C. 2018), and which the undersigned hold an ethical obligation to address in an exercise of caution and candor to this Court. Respectfully, neither of those rulings are applicable to the factual circumstances in the present case. In Doe, this Court was willing to dismiss President Trump as a party to the lawsuit because doing so "will have little or no substantive effect on this litigation" given that "Plaintiffs can still obtain all of the relief that they seek from the other Defendants." See 319 F. Supp. 3d at 543. In the present case, President Trump is the only officer involved (so far as Mr. Sims is aware) against whom relief can be sought. In Lovitsky, this Court concluded that the manner in which President Trump detailed his financial assets and liabilities, as required by statute, was a discretionary action for which Congress had not provided clear and mandatory requirements that conflicted with the president's interpretation. See 308 F. Supp. 3d at 258. Conversely, Mr. Sims is seeking to prevent the Defendants from circumventing well-established case law regarding the First Amendment rights of former federal employees to disclose unclassified information they learned during their federal service.

The Defendants contend Mr. Sims has not sufficiently established that he has actually been harmed or that harm is impending, noting that Mr. Sims continues to sell *Team of Vipers* and speak publicly. See Defs' Memo at 13-17. This argument clearly falls short.

Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity, see Boardley v. Dep't of Interior, 615 F.3d 508, 516 (D.C. Cir. 2010), and the threat of the prior restraint itself can constitute an actual injury if the government action has a close enough nexus to expression to pose a real and substantial threat of censorship. See Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 759 (1988); see also id. at 755-56 ("[W]hen a licensing statute vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license.")(internal citation omitted); Navegar, Inc. v. United States, 103 F.3d 994, 998 (D.C. Cir. 1997)("In such situations the threat of prosecution provides the foundation for justiciability as a constitutional and prudential matter, and the Declaratory Judgment Act, 28 U.S.C. § 2201 (1994), provides the mechanism for seeking preenforcement review in federal court."), citing Steffel v. Thompson, 415 U.S. 452, 480 (1974)(Rehnquist, J., concurring).[10]

The rationale for providing this "special gloss" to First Amendment challenges to prior restraint, see Van Wagner Boston, LLC. v. Davey, 770 F.3d 33, 37 (1st Cir. 2014), borders on self-evident: to do otherwise and provide such unrestrained government power

---

[10] The other circuits have similarly adhered to this principle regarding an injury-in-fact. See generally Get Outdoors II, LLC v. City of San Diego, Cal., 506 F.3d 886, 894–95 (9th Cir. 2007) Van Wagner Bos., LLC v. Davey, 770 F.3d 33, 34-42 (1st Cir. 2014); Miller v. City of Cincinnati, 622 F.3d 524, 532 (6th Cir. 2010); CAMP Legal Def. Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1275 (11th Cir. 2006).

over speech would be an opportunity for abuse. See Bd. of Airport Comm'rs v. Jews for Jesus, 482 U.S. 569, 576 (1987); see also Heffron v. Int'l Soc. For Krishna Consciousness, Inc., 452 U.S. 640, 649 (1981)(warning of "more covert forms of discrimination that may result when arbitrary discretion is vested in some governmental authority").

Even if the mere threat of prior restraint, in and of itself, was not sufficient, the factual record demonstrates that Mr. Sims has more than sufficiently pled the extent to which the injury is actual and imminent. Specifically, Mr. Sims outlined in his Complaint that: (a) President Trump, in his official capacity, provided direction to the Trump Campaign to file the Demand for Arbitration *only* after *Team of Vipers* had actually come out and regarding information almost (if not) exclusively learned during Mr. Sims' tenure in federal service[11]; and (b) the Demand for Arbitration, which is asserted to have been pursued by the Defendants using the Trump Campaign as a cut-out, seeks monetary damages, as well as to enjoin Mr. Sims' ability to speak publicly in a manner alleged to be in violation the NDA. See Compl. at ¶¶18-21.

These are not speculative or hypothetical injuries to Mr. Sims: this is concrete monetary and injunctive harm regarding which he faces the real possibility of having to endure once the separate arbitration proceeding is complete. The Defendants' claim that this is effectively too abstract given that the arbitration has not concluded, see Defs' Memo at 16-17, citing J. Roderick MacArthur Found. v. FBI, 102 F.3d 600, 606

---

[11] While notably taking no action against any individual who authored a favorable book on President Trump's tenure in the White House, notwithstanding presumably identical NDA obligations. Compl. at ¶25.

(D.C. Cir. 1996), reflects nothing short of a clear misreading of their own case citation. The plaintiff lacked standing in J. Roderick because there was no evidence nor basis to conclude that the FBI's mere maintenance of records regarding it would (or might ultimately) cost the plaintiff grant funding or future job opportunities. Id. at 606.

With all due respect, it borders on ludicrous for the Defendants to compare those factual circumstances to the present case. Mr. Sims has not been "subjectively chilled". The threat of monetary and injunctive harm, which by the very claims in the Complaint originate with and are being pursued on the specific instruction of the Defendants, is not something Mr. Sims merely fears could occur in the distant future: it has already been set in motion through the filing of a formal Demand for Arbitration. See Chamber of Commerce v. FEC, 69 F.3d 600, 603 (D.C. Cir. 1995)("A party has standing to challenge, pre-enforcement, even the constitutionality of a statute if First Amendment rights are arguably chilled, so long as there is a credible threat of prosecution.")(emphasis omitted); see also Virginia v. American Booksellers Ass'n, 484 U.S. 383 (1988)("We are not troubled by the pre-enforcement nature of this suit. The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise.").

And, as must be repeated *ad naseum*, by the explicit terms of his Complaint, which must be accepted as true for purposes of the Defendants' Motion, see Sparrow, 216 F.3d at 1113, the U.S. Government is directly behind the arbitration effort to chill Sims' free speech.

### D.  MR. SIMS' CLAIM DOES NOT FIRST REQUIRE A DETERMINATION FROM THE ARBITRATOR IN ORDER TO ESTABLISH RIPENESS

In one of their final jurisdictional gasps, the Defendants argue that a separate arbitration proceeding to which the Defendants are not parties and that involves an NDA

that was signed prior to Mr. Sims' federal service somehow renders Mr. Sims'

constitutional claim unripe for adjudication. See Defs' Memo at 17-18. This contention

should be dismissed as unavailing.

In determining whether a dispute is ripe for review, a court should balance in a

flexible and pragmatic manner the hardship to the parties from withholding review and

the desire not to interfere with agency policymaking. See Washington Legal Found. v.

Kessler, 880 F. Supp. 26, 34 (D.D.C. 1995), citing Ciba-Geigy Corp. v. EPA, 801 F.2d

430, 434 (D.C. Cir. 1984). Ultimately, the court examines several factors, including

whether a purely legal issue is presented, whether a more concrete setting would be

beneficial to adjudicating the issue, and whether the agency's action is sufficiently final.

See Ciba-Geigy Corp. 801 F.2d at 435. Courts tend to apply a more permissive standard

for ripeness when violations of the First Amendment are alleged. See Philip Morris USA

Inc. v. FDA, 202 F. Supp. 2d 31, 48 (D.D.C. 2016); see also Chamber of Commerce of

the U.S., 69 F.3d at 604 ("The issue presented is a relatively pure legal one that

subsequent enforcement proceedings will not elucidate."), citing Abbot Labs. v. Gardner,

387 U.S. 136, 149 (1967).

The facts of the present case clearly weigh in favor of concluding Mr. Sims' claim is

ripe for adjudication, whether for constitutional or prudential reasons. This is purely a

legal question; namely whether the Defendants' actions of using the Trump Campaign as

a cut-out to punish Mr. Sims' for publishing unclassified information derived from his

federal employment is an impermissible infringement by a government actor on

Mr. Sims' First Amendment rights. See Nat'l Ass'n of Home Builders v. Army Corps of

Eng'rs, 417 F.3d 1272, 1282 (D.C. Cir. 2005)("We have also often observed that a purely

legal claim in the context of a facial challenge, such as the appellant's claim, is

'presumptively reviewable.'"), citing Nat'l Mining Ass'n v. Fowler, 324 F.3d 752, 757

(D.C. Cir. 2003); see also Cablevision Sys. Corp. v. FCC, 649 F.3d 694, 715 (D.C. Cir.

2011)("Where 'no institutional interests favor[] postponement of review, a petitioner

need not satisfy the hardship prong' of our ripeness test."), quoting AT&T Corp. v. FCC,

349 F.3d 692, 700 (D.C. Cir. 2003).

This is not a situation involving a draft regulation or preliminary agency action that

needs to be further fleshed out. President Trump is the only government officer involved,

as far as Mr. Sims is aware, and it was President Trump, in his official capacity, who

provided instruction to the Trump Campaign on the course of action against Mr. Sims

that has manifested in the form of the separate, ongoing arbitration proceeding that seeks

substantial monetary and non-monetary damages. Compl. at ¶¶26-28. See Action for

Children's Television v. FCC, 59 F.3d 1249, 1258 (D.C. Cir. 1995)("There is no dispute

about the working of the procedures being challenged and there is little or nothing more

that the agency could do in a particular adjudication that would likely inform the court's

decision on the question whether the enforcement scheme is currently being, or is capable

of being, administered in accordance with the first amendment."); see also Mountain

States Tel. & Tel. Co. v. FCC, 939 F.2d 1035, 1041 (D.C. Cir. 1991)("In light of the

wholly legal and facial nature of the present challenge, we cannot agree that our ability to

review the agency's decision would be increased by delay.").

Finally, the ultimate determination by the arbitrator will not have any particular

binding impact upon the present case and the narrow legal issue presented to this Court.

The Defendants are not parties to the arbitration and any conclusion ultimately rendered

regarding the ability of the non-government actor, the Trump Campaign, to enforce its

NDA against Mr. Sims would not undermine this Court's authority to adjudicate the

constitutionality of the Defendants' actions. See Chemical Waste Management, Inc. v.

EPA, 869 F.2d 1526, 1533 (D.C. Cir. 1989)(in determining issues were ripe for review,

court noted agency's later decisions would not likely affect court's judgment on those

issues).

Accordingly, this Court is well within its authority and discretion to conclude that

Mr. Sims' claims are ripe for review.

## IV.  THIS COURT WOULD ALSO BE WITHIN ITS DISCRETION TO EXERCISE JURISDICTION OVER MR. SIMS' DECLARATORY JUDGMENT CLAIM

Not to be outdone, the Defendants offer one last argument against adjudication of

Mr. Sims' claim: that this Court should exercise its discretion to decline jurisdiction

under the Declaratory Judgment Act in light of the separate arbitration proceeding.

See Defs' Memo at 19-22. This assertion should be rejected on grounds similar to those

expressed above in response to the Defendants' arguments.

A valid declaratory judgment claim should ordinarily be entertained, except if the

circumstances indicate that there is a reason for the court not to do so. See Fiberlight,

LLC v. Amtrak, 81 F. Supp. 3d 93, 113 (D.D.C. 2015); see also Wilton v. Seven Falls

Co., 515 U.S. 277, 288-89 (1995)(reviewing decisions based on abuse of discretion

standard); Pub. Affairs Press v. Rickover, 369 U.S. 111, 112 (1962)("[A] District Court

cannot decline to entertain such an action as a matter of whim or personal

disinclination."). To guide district court judges in rendering a determination on whether

to withhold jurisdiction as a matter of discretion, the D.C. Circuit identified factors (none

of which are dispositive) to consider, such as whether: (1) judgment would settle the controversy; (2) other remedies are available or proceedings pending; (3) convenience of the parties; (4) equity of the conduct of the plaintiff; (5) prevention of procedural fencing; (6) state of the record; (7) degree of adverseness between the parties; (9) and public importance of the question to be decided. See Fiberlight, 81 F. Supp. 3d at 114, citing Hanes Corp. v. Millard, 531 F.2d 585, 591 n.4 (D.C. Cir. 1976).

Application of those factors even in a time-constrained and politically sensitive circumstance has nonetheless resulted in a district court still concluding it was an appropriate exercise of discretion to render a declaratory judgment. See Comm. on the Judiciary v. Miers, 558 F. Supp. 2d 53, 95-99 (D.D.C. 2008)(exercising jurisdiction over legal dispute regarding executive privilege despite pending-expiration of subpoenas for White House officials given strictly legal question at issue and importance of preventing legal stalemate between two political branches). In the circumstances where the courts have declined to exercise jurisdiction, it has typically been due to the appearance of "forum shopping" to establish anticipatory defenses. See, e.g., Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau, 979 F. Supp. 2d 104, 117-19 (D.D.C 2013)(factors justified declining jurisdiction because plaintiff filed suit mere days before separate state action set to commence and with clear intent of preemptively nullifying separate state action as unconstitutional); POM Wonderful LLC v. FTC, 894 F. Supp. 2d 40, 44-45 (D.D.C. 2012)(similar justification); Swish Mktg., Inc. v. FTC, 669 F. Supp. 2d, 72, 77-80 (D.D.C. 2009)(similar justification).

In the context of the present case, Mr. Sims respectfully submits that application of the Hanes Corp. factors demonstrates this Court would be well within its discretion to

exercise jurisdiction and render a declaratory judgment. There is no issue of "procedural fencing": Mr. Sims only brought this litigation against the Defendants *after* President Trump pushed the Trump Campaign to separately file the Demand for Arbitration, see Compl. at ¶¶18, 20-21, and it borders on axiomatic that absent that choice by President Trump there would have been no need for Mr. Sims to bring this lawsuit.

Nor would a victory for Mr. Sims here necessarily create an anticipatory defense that he could use in the separate arbitration proceeding. The extent to which the Defendants, as state actors, infringed upon Mr. Sims' First Amendment rights would not automatically have binding and substantive implications regarding the ability of a private actor, the Trump Campaign, to pursue an alleged breach of a private NDA by Mr. Sims.[12] Neither proceeding arguably has the ability to conclusively settle each other's disputes. See Swish Mkt. Inc., 669 F. Supp. 2d at 78 (noting that declaratory action can be entertained even if does not settle all possible differences).

The factors in favor of Mr. Sims can be construed as carrying the day. The present case poses a predominantly legal question that requires little in the way of the record being further fleshed out. There are no other remedies available, as this litigation is the only means by which Mr. Sims can seek vindication of the infringement upon his First Amendment by the Defendants. Finally, the public importance of the legal issue of first impression posed to this Court is significant and considerable. This lawsuit was necessitated by the Defendants' unprecedented attempt to circumvent well-established

---

[12] Even assuming *arguendo*, however, that a declaratory judgment in Mr. Sims' favor would at least be cited to for persuasive value in the separate arbitration proceeding, that fact, in and of itself, is not dispositive in favor of the Defendants in the context of the Hanes Corp. analysis. See Swish Mktg., Inc., 669 F. Supp. 2d at 79 ("Courts certainly *may* entertain declaratory actions that involve anticipatory defenses.").

First Amendment case law regarding prior restraint against former federal employees by

using a private entity it essentially controls – The Trump Campaign –

as a cut-out to arbitrarily and discriminatorily punish Mr. Sims for publishing

unclassified information in *Team of Vipers* that was indisputably learned during his

federal service. Compl. at ¶¶31-32.

Nothing less than a definitive declaratory ruling by this Court regarding the legality

of the Defendants' actions will suffice here.

## **CONCLUSION**

For the foregoing reasons, the Defendants' Motion to Dismiss should be denied.

Date: May 31, 2019

Respectfully submitted,

/s/
_____
Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, Esq.
D.C. Bar #440532
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 700
Washington, D.C. 20036
(202) 454-2809
(202) 330-5610 fax
Brad@MarkZaid.com
Mark@MarkZaid.com

Attorneys for the Plaintiff

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CLIFTON DAVID SIMS                          *
                                            *
                Plaintiff,                  *
                                            *
        v.                                  *        Civil Action 19-345 (CKK)
                                            *
DONALD J. TRUMP,                            *
<u>et al.</u>                               *
                                            *
                Defendants.                 *
*       *       *       *       *       *   *   *       *       *       *       *

## <u>ORDER</u>

    Upon consideration of Plaintiff's Memorandum of Points and Authorities in

Opposition to Defendants' Motion to Dismiss, and the entire record herein, it is this

_____ day of _____ 2019, hereby

    ORDERED, that the defendants' Motion is denied.


_____
UNITED STATES DISTRICT JUDGE