**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CLIFTON DAVID SIMS,<br><br>        Plaintiff,<br><br>  v.<br><br>DONALD J. TRUMP, in his official capacity<br>as President of the United States; and<br>UNITED STATES OF AMERICA,<br><br>        Defendants. | Case No. 1:19-cv-345 (CKK) |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

I.  THE ARBITRATION PROVISION OF PLAINTIFF'S AGREEMENT
    REQUIRES DISMISSING HIS COMPLAINT. ................................................................ 2

II. THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT-
    MATTER JURISDICTION. .......................................................................................... 5

    A.  Sovereign Immunity Bars Plaintiff's Claims Against the United States. ..................... 5

    B.  Plaintiff's Claim Against the President Should Be Dismissed Because
        Declaratory Relief May Not Be Ordered Against the President In His Official
        Capacity. ................................................................................................................. 7

    C.  Plaintiff Lacks Standing Because He Has Not Alleged A Cognizable Injury. ............. 9

    D.  Plaintiff's Claim Is Unripe Because An Arbitrator Has Not Yet Determined
        Whether the Agreement Is Enforceable Or Whether Plaintiff Breached the
        NDA. ..................................................................................................................... 14

III. THE RELEVANT FACTORS WEIGH STRONGLY AGAINST THE COURT
     EXERCISING JURISDICTION OVER PLAINTIFF'S DECLARATORY
     JUDGMENT ACT CLAIM. ...................................................................................... 16

CONCLUSION ................................................................................................................... 18

## TABLE OF AUTHORITIES

**CASES**

*14 Penn Plaza LLC v. Pyett*,
   556 U.S. 247 (2009) ................................................................................................ 4, 5

*Action for Children's Television v. FCC*,
   59 F.3d 1249 (D.C. Cir. 1995) ................................................................................ 15

*Air Line Pilots Ass'n v. Miller*,
   523 U.S. 866 (1998) ................................................................................................. 3

*Alexander v. United States*,
   509 U.S. 544 (1993) ............................................................................................... 11

*Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*,
   297 F. Supp. 2d 165 (D.D.C. 2003) ........................................................................ 6

*Blumenthal v. Trump*,
   373 F. Supp. 3d 191 (D.D.C. 2019) ......................................................................... 9

*Boumediene v. Bush*,
   553 U.S. 723 (2008) ................................................................................................. 9

*Cablevision Sys. Corp. v. FCC*,
   649 F.3d 695 (D.C. Cir. 2011) ................................................................................ 16

*Chamber of Commerce v. FEC*,
   69 F.3d 600 (D.C. Cir. 1995) ..................................................................... 12, 13, 15

*Chamber of Commerce v. Reich*,
   74 F.3d 1322 (D.C. Cir. 1996) .................................................................................. 7

*Chem. Waste Mgmt., Inc. v. EPA*,
   869 F.2d 1526 (D.C. Cir. 1989) .............................................................................. 15

*Ciba-Geigy Corp. v. EPA*,
   801 F.2d 430 (D.C. Cir. 1986) ................................................................................ 15

*Citizens for Responsibility & Ethics in Wash. (CREW) v. Trump*,
   302 F. Supp. 3d 127 (D.D.C. 2018) ......................................................................... 8

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ............................................................................................... 10

*Clark v. Library of Cong.*,
   750 F.2d 89 (D.C. Cir. 1984) ........................................................................ 7

*Comm. on the Judiciary, U.S. House of Representatives v. Miers*,
   558 F. Supp. 2d 53 (D.D.C. 2008) ......................................................... 17, 18

*CREW v. Trump*,
   No. 18-5150 (D.C. Cir. May 28, 2019) ....................................................... 9

*Dist. of Columbia v. Trump*,
   291 F. Supp. 3d 725 (D. Md. 2018),
   *appeal docketed*, No. 18-2488 (4th Cir. Dec. 17, 2018) ............................ 9

*DSMC, Inc. v. Convera Corp.*,
   273 F. Supp. 2d 14 (D.D.C. 2002) ............................................................. 3

*Fares v. Smith*,
   249 F. Supp. 3d 115 (D.D.C. 2017),
   *aff'd*, 901 F.3d 315 (D.C. Cir. 2018) ......................................................... 6

*Fiberlight, LLC v. Amtrak*,
   81 F. Supp. 3d 93 (D.D.C. 2015) ........................................................ 17, 18

*Fox v. Computer World Servs. Corp.*,
   920 F. Supp. 2d 90 (D.D.C. 2013) ............................................................. 3

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992) ................................................................................. 6, 7

*Geronimo v. Obama*,
   725 F. Supp. 2d 182 (D.D.C. 2010) ......................................................... 6, 7

*Haitian Refugee Ctr. v. Gracey*,
   809 F.2d 794 (D.C. Cir. 1987) ................................................................. 10

*Hanes Corp. v. Millard*,
   531 F.2d 585 (D.C. Cir. 1976) ................................................................. 17

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) ............................................................................... 5

*Hudson v. City of Riviera Beach*,
   982 F. Supp. 2d 1318 (S.D. Fla. 2013) ...................................................... 4

*J. Roderick MacArthur Found. v. F.B.I.*,
   102 F.3d 600 (D.C. Cir. 1996) .......................................................... 10, 12

*Kelleher, v. Dream Catcher, LLC*,
   278 F. Supp. 3d 221 (D.D.C. 2017) ........................................................................ 3

*Knight First Amendment Inst. of Columbia Univ. v. Trump*,
   302 F. Supp. 3d 541 (S.D.N.Y. 2018),
    *appeal docketed*, No. 18-1691 (2d Cir. June 5, 2018) ............................................. 9

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ................................................................................................ 3

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .......................................................................................... 10, 12

*McDonald v. City of W. Branch*,
   466 U.S. 284 (1984) ................................................................................................ 4

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) ................................................................................................ 5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) .................................................................................................... 3

*Mountain States Tel. & Tel. Co. v. FCC*,
   939 F.2d 1035 (D.C. Cir. 1991) ............................................................................ 15

*Nat'l Min. Ass'n v. Fowler*,
   324 F.3d 752 (D.C. Cir. 2003) .............................................................................. 16

*Nat'l Min. Ass'n v. Slater*,
   167 F. Supp. 2d 265 (D.D.C. 2001) ...................................................................... 16

*Nat'l Treas. Employees Union v. Nixon*,
   492 F.2d 587 (D.C. Cir. 1974) ................................................................................ 8

*Nat'l Treasury Emps. Union v. United States*,
   101 F.3d 1423 (D.C. Cir. 1996) ............................................................................ 16

*Navegar, Inc. v. United States*,
   103 F.3d 994 (D.C. Cir. 1997) .............................................................................. 12

*Newdow v. Roberts*,
   603 F.3d 1002 (D.C. Cir. 2010) .............................................................................. 8

*Nixon v. Fitzgerald*,
   457 U.S. 731 (1982) ................................................................................................ 7

*Philip Morris USA Inc. v. FDA*,
    202 F. Supp. 3d 31 (D.D.C. 2016) ........................................................................ 15

*Riley v. BMO Harris Bank, N.A.*,
    61 F. Supp. 3d 92 (D.D.C. 2014) ...................................................................... 2, 3

*Saget v. Trump*,
    345 F. Supp. 3d 287 (E.D.N.Y. 2018),
    *appeal docketed*, No. 19-1685 (2d Cir. June 7, 2019) ............................................ 9

*Sakyi v. Estee Lauder Cos. Inc.*,
    308 F. Supp. 3d 366 (D.D.C. 2018) ...................................................................... 3

*Swan v. Clinton*,
    100 F.3d 973 (D.C. Cir. 1996) ............................................................................ 8

*Taylor v. Fannie Mae*,
    839 F. Supp. 2d 259 (D.D.C. 2012) ...................................................................... 4

*Texas v. United States*,
    523 U.S. 296 (1998) ............................................................................................. 16

*Trudeau v. FTC*,
    456 F.3d 178 (D.C. Cir. 2006) ............................................................................ 7

*Virginia v. Am. Booksellers Ass'n, Inc.*,
    484 U.S. 383 (1988) ...................................................................................... 13, 14

*Wallace v. Suffolk Cty. Police Dep't*,
    809 F. Supp. 2d 73 (E.D.N.Y. 2011) .................................................................... 4

*Wash. Legal Found. v. Kessler*,
    880 F. Supp. 26 (D.D.C. 1995) ......................................................................... 15

*Z Street, Inc. v. Koskinen*,
    44 F. Supp. 3d 48 (D.D.C. 2014) ..................................................................... 6, 7

**STATUTES**

5 U.S.C. § 502 ........................................................................................................ 6

5 U.S.C. § 702 ..................................................................................................... 6, 7

9 U.S.C. §§ 9-11 .................................................................................................... 4

28 U.S.C. § 1331 .................................................................................................... 5

28 U.S.C. §§ 2201-2202 ................................................................................................ 5

**OTHER AUTHORITIES**

5 Charles Alan Wright, Arthur R. Miller et al.,
    Federal Practice and Procedure § 1212 (3d ed. 2017) ............................................... 5

10 Wright & Miller,
    Federal Practice and Procedure § 2759 (1973) ....................................................... 17

10B Wright & Miller,
    Federal Practice and Procedure § 2759 (4th ed. 2013) ............................................. 18

Anderson Cooper, *Anderson Cooper 360 Degrees*: *President Trump Defends His Response to
    Charlottesville After New Criticism From Biden*, CNN (Apr. 26, 2019),
    http://transcripts.cnn.com/TRANSCRIPTS/1904/26/acd.02.html ........................................... 10

Tweet of Cliff Sims (April 26, 2019),
    https://twitter.com/Cliff_Sims/status/1121926494291468290 ................................................. 10

Tweet of Cliff Sims (May 29, 2019),
    https://twitter.com/Cliff_Sims/status/1133712785462956033 ................................................. 10

## INTRODUCTION

The actual dispute in this case is a disagreement between a private citizen and his private former employer over whether that citizen should be forced to abide by an arbitration agreement he signed.  There is no question that plaintiff's claim falls within the broad terms of his arbitration agreement with his former employer, Donald J. Trump for President, Inc. (the "Trump Campaign"), such that he must raise that claim in his arbitration proceeding with that employer. Under the Federal Arbitration Act, there is no room for this Court to involve itself in that lawful process in the manner plaintiff requests.

Plaintiff seeks to circumvent the arbitration process by bringing a constitutional claim against the United States as a sovereign and the President of the United States in his official capacity, but this claim fails for multiple basic, threshold reasons.  Foremost, plaintiff's claim that the President violated his First Amendment rights by supposedly directing the Campaign to initiate an arbitration proceeding against him cannot be brought outside arbitration, which plaintiff previously agreed would include the issue of what disputes are properly subject to arbitration.  And even if that were incorrect, plaintiff's claim still fails for multiple, independent reasons: (1) sovereign immunity bars plaintiff's claim against the United States, (2) plaintiff's claim against the President in his official capacity should be dismissed because courts cannot issue declaratory relief directly against the President in his official capacity, (3) plaintiff has not alleged any cognizable First Amendment injury because his complaint never alleges that his speech has been restricted, infringed, or chilled, and (4) plaintiff's claim is unripe because his arbitration proceeding is ongoing and it remains unclear whether an arbitration award will issue against plaintiff and, if so, whether it will injure plaintiff in any constitutionally cognizable way.  Finally, even if this Court did technically possess subject-matter jurisdiction over plaintiff's claims against the United States and the President in his official capacity, the Court should still exercise its discretion

to decline jurisdiction over plaintiff's attempt to conjure novel constitutional claims in order to end-run an ongoing arbitration proceeding with the private entity that formerly employed him.

For all of these reasons, and for the reasons provided in Defendants' Memorandum in Support of Defendants' Motion to Dismiss, ECF No. 8-1 (Defs.' Mem.), this Court should dismiss the complaint.

## ARGUMENT

### I.  THE ARBITRATION PROVISION OF PLAINTIFF'S AGREEMENT REQUIRES DISMISSING HIS COMPLAINT.

Plaintiff does not dispute that he voluntarily entered into an employment contract with the Campaign that requires him to arbitrate his disputes and that further reserves for the arbitrator the question whether any disputes related to the contract are arbitrable.  Plaintiff instead argues that defendants who are not signatories to an arbitration agreement cannot move to enforce that agreement here and that plaintiff's constitutional claim cannot be addressed in the first instance by an arbitrator.  Defs.' Mem. 7-10.  Both of those contentions are wrong.

*First*, plaintiff is incorrect that he cannot be compelled to bring his claim in arbitration because the defendants are not signatories to the employment agreement.  As this Court found in *Riley v. BMO Harris Bank, N.A.*, "non-signatories to an arbitration agreement . . . may compel a signatory to the agreement to arbitrate a dispute pursuant to the doctrine of estoppel . . . 'when the non-signatory is seeking to resolve issues that are intertwined with an agreement that the signatory has signed.'"  61 F. Supp. 3d 92, 98-99 (D.D.C. 2014).  Plaintiff attempts to distinguish this Court's decision by arguing that "[t]he bases for Mr. Sims' claims in the present case are not contingent on the existence of the NDA," Pl.'s Mem. of Points & Auths. in Opp'n to Defs.' Mot. to Dismiss at 8 n.3, ECF No. 10 ("Pl.'s Mem."), but the NDA is unmistakably the heart of plaintiff's claim.  The possibility that the Campaign will successfully enforce its contractual NDA via arbitration

against plaintiff is what animates his entire Complaint, which asks this Court to enjoin that prospect of private contractual enforcement—making clear that the arbitration and his claims are entirely "intertwined." *Id.* Plaintiff should accordingly be required to submit those claims to arbitration. *See also Sakyi v. Estee Lauder Cos. Inc.*, 308 F. Supp. 3d 366, 385 (D.D.C. 2018) (holding that non-signatory may compel arbitration when "there would be no claim against the non-signatory defendant but for the contract"); *Kelleher, v. Dream Catcher, LLC*, 278 F. Supp. 3d 221, 225 (D.D.C. 2017) (same); *Fox v. Computer World Servs. Corp.*, 920 F. Supp. 2d 90, 104 (D.D.C. 2013) (holding that non-signatory may compel arbitration because the claims asserted are "intertwined . . . with the employment offer letter that [plaintiff] has accepted (and the arbitration clause it contained)").[1]

*Second*, it is clear that plaintiff's constitutional claims can be—and here must be—raised and resolved in plaintiff's arbitration proceeding. Although plaintiff asserts that "many decisions issued by other courts" have "declin[ed] to find that constitutional claims such as the one raised by Mr. Sims are appropriately addressed through an arbitration proceeding," Pl.'s Mem. 10, he does not cite a single case holding that, under the Federal Arbitration Act, the question whether a claim asserting a violation of a constitutional right is arbitrable cannot be delegated to an arbitrator. The majority of the cases plaintiff cites address whether courts may afford preclusive effect to an arbitrator's decision implicating a constitutional issue. Those issue-preclusion cases are not

---

[1] Even if the Court finds that a non-signatory may not compel a signatory to arbitrate a claim against the non-signatory, it still has "the authority and discretion to stay th[e] case pending the prompt resolution of the arbitration in question." *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 30 (D.D.C. 2002) (citing *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998), *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983), and *Landis v. N. Am. Co.*, 299 U.S. 248, 254–255 (1936)); *see also DSMC, Inc.*, 273 F. Supp. 2d at 28 (noting that "neither the Supreme Court nor this Circuit have directly addressed the issue of whether a willing non-signatory to an arbitration agreement can compel a signatory to arbitrate its claims against the non-signatory").

relevant here, where the arbitrator has not issued any decision on plaintiff's claim and defendants have made no suggestion as to how a federal court should view any such future decision if a party seeks to confirm, modify, vacate, or correct it, as provided for in the Federal Arbitration Act. 9 U.S.C. §§ 9-11. In addition, most of the cases plaintiff cites predate *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 265 (2009), wherein the Supreme Court explained that several of its earlier decisions "that were highly critical of the use of arbitration for the vindication of statutory antidiscrimination rights . . . rested on a misconceived view of arbitration that this Court has since abandoned." Reversing that prior misconceived view, the Court made clear in *14 Penn Plaza* that a provision in an employment agreement that clearly and unmistakably delegates even statutory questions to an arbitrator must be enforced because "Congress has chosen to allow arbitration of" claims not specifically excluded from arbitration under federal law. *Id.* at 260.[2] And in the wake of *14 Penn Plaza*, a judge on this court enforced the parties' arbitration agreement notwithstanding that the plaintiff had alleged a First Amendment claim. *Taylor v. Fannie Mae*, 839 F. Supp. 2d 259 (D.D.C. 2012).

    As the Supreme Court just this year reaffirmed, "[w]hen the parties' contract delegates the

---

[2] Moreover, the two cases plaintiff cites that post-date *14 Penn Plaza* are neither binding on this court nor persuasive. In *Wallace v. Suffolk Cty. Police Dep't*, 809 F. Supp. 2d 73 (E.D.N.Y. 2011), the court, relying on a Second Circuit decision that itself predates *14 Penn Plaza*, declined to give preclusive effect to an arbitration proceeding in the context of a Section 1983 First Amendment retaliation claim brought pursuant to a collective bargaining agreement, noting that other pre-*14 Penn Plaza* district court decisions in that circuit have also done so. And in *Hudson v. City of Riviera Beach*, 982 F. Supp. 2d 1318, 1338 (S.D. Fla. 2013), the court found that the plaintiff's submission of his Section 1983 claim to the administrative proceeding provided for in the collective bargaining agreement the plaintiff signed did not preclude a subsequent federal court claim for a Fourth Amendment violation. But that court based its finding on *McDonald v. City of W. Branch*, 466 U.S. 284 (1984), ignoring the *14 Penn Plaza* decision and the Supreme Court's admonition there that *McDonald* involved "whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims" where "the employees . . . had not agreed to arbitrate their statutory claims." *14 Penn Plaza*, 556 U.S. at 264.

arbitrability question to an arbitrator, . . . a court possesses no power to decide the arbitrability issue . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is *wholly groundless*." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (emphasis added). Such questions are for the arbitrator in the first instance. "Congress is fully equipped to 'identify any category of claims as to which agreements to arbitrate will be held unenforceable,'" *14 Penn Plaza*, 556 U.S. at 270 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985)), and, contrary to plaintiff's suggestion, has never carved constitutional claims out of the FAA's broad mandate. The Court should thus leave resolution of plaintiff's claim to the arbitrator and dismiss plaintiff's complaint.

## II.  THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION.

Regardless of whether the FAA requires dismissing the complaint, it is clear that this Court lacks subject-matter jurisdiction on multiple bases, including bedrock principles of sovereign immunity and declaratory relief against the President personally. Plaintiff disagrees, but his efforts to establish jurisdiction fail. For each of these reasons, too, dismissal is warranted.

### A.  Sovereign Immunity Bars Plaintiff's Claims Against the United States.

Plaintiff's complaint should be dismissed because he has sued the United States but failed to identify any applicable waiver of sovereign immunity. 5 Charles Alan Wright, Arthur R. Miller et al., Federal Practice and Procedure § 1212 (3d ed. 2017) ("[T]he jurisdictional allegations in an original action . . . against the United States must include a reference to the statute containing an express or implied waiver of the government's immunity from suit."); *see also id.* n.3 (citing cases). Although plaintiff cited 28 U.S.C. § 1331 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, as the basis for this Court's jurisdiction, Compl. ¶ 1, neither of those statutes waives sovereign immunity; nor does the First Amendment, under which plaintiff alleges his claims arise.

*See* Defs.' Mem. 10-12.

In his opposition to defendants' motion to dismiss, plaintiff asserts for the first time that the Administrative Procedure Act ("APA"), 5 U.S.C. § 502, waives sovereign immunity for his claim.  But that fails both because plaintiff cannot amend his complaint through his briefs, *see, e.g.*, *Fares v. Smith*, 249 F. Supp. 3d 115, 125 (D.D.C. 2017), *aff'd*, 901 F.3d 315 (D.C. Cir. 2018) ("[I]t is axiomatic that [a] [p]laintiff[] cannot amend [his] Complaint via [his] briefs." (citing *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003))), and the APA does not apply against the President of the United States in his official capacity.  While the APA does waive sovereign immunity for suits seeking non-monetary relief that allege a non-APA cause of action, the Act's plain language makes clear that the waiver applies only to suits that allege wrongful action by "*an agency or an officer or employee thereof*."  5 U.S.C. § 702 (emphasis added); *see also Z Street, Inc. v. Koskinen*, 44 F. Supp. 3d 48, 63 (D.D.C. 2014) (cited in Pl.'s Mem. 12-13) (stating that § 702 "waives sovereign immunity with respect to suits for nonmonetary damages that allege wrongful action by an agency or its officers or employees," and noting that that case, alleging that the Internal Revenue Service's implementation of an internal review policy violated the First Amendment, "fits precisely those criteria").  Because "the President is not an agency within the meaning of the [APA]," *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992), the APA's waiver of sovereign immunity does not apply to claims alleging wrongful action by him.  *Geronimo v. Obama*, 725 F. Supp. 2d 182, 186 (D.D.C. 2010) ("[The complaint] cites no agency action, inaction or involvement at all. As a result, plaintiffs have not pled the agency action needed for the APA's waiver of sovereign immunity to apply as a cure to the defect in subject matter jurisdiction.").

Plaintiff cites numerous decisions but none of them actually hold otherwise.  To the

contrary, each of those cases involved claimed against agencies and their officials for allegedly unlawful conduct rather than claims against the President directly.  *See Z Street*, 44 F. Supp. 3d at 63 (holding APA waives sovereign immunity for suit against Internal Revenue Service for nonmonetary damages "challeng[ing] the actions of the agency, or its employees"); *Trudeau v. FTC*, 456 F.3d 178, 187 (D.C. Cir. 2006) (holding that although APA's waiver of sovereign immunity "is not limited to APA cases," the language of the waiver sentence in § 702 "does refer to a claim against an 'agency' and hence waives immunity only when the defendant falls within that category"); *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1326 (D.C. Cir. 1996) (because the plaintiffs' "challenge [was] directed at the *President's* statutory authority to issue the Executive Order . . . there does not exist the necessary 'agency action' that triggers the APA's waiver of sovereign immunity"); *Clark v. Library of Cong.*, 750 F.2d 89, 102 (D.C. Cir. 1984) (holding that plaintiff "may not take advantage of [the APA's] broad waiver of sovereign immunity since the Library of Congress is not an 'agency' as defined under the Administrative Procedure Act"). Plaintiff has thus failed to satisfy his burden of establishing this Court's jurisdiction over his claim, and the Complaint should be dismissed.  *See Geronimo*, 725 F. Supp. 2d at 187.

### B.  Plaintiff's Claim Against the President Should Be Dismissed Because Declaratory Relief May Not Be Ordered Against the President In His Official Capacity.

Plaintiff's attempt to obtain declaratory relief against the President in his official capacity should similarly be dismissed because courts cannot issue such relief against the President.  *See* Defs.' Mem. 12-13.  In *Franklin v. Massachusetts*, the Supreme Court held that, "[o]ut of respect for the separation of powers and the unique constitutional position of the President, . .. textual silence is not enough to subject the President" to suit under the APA.  505 U.S. 788, 800-801 (1992) (citing *Nixon v. Fitzgerald,* 457 U.S. 731, 748, n.27 (1982), in which the Court applied a

similar express statement requirement in declining to extend *Bivens* and other implied causes of action for damages to the President).  By the same logic, because the Declaratory Judgment Act lacks an express statement subjecting the President to suit thereunder, declaratory relief cannot be obtained against the President.  *See also Swan v. Clinton*, 100 F.3d 973, 976 n.1 & 977 (D.C. Cir. 1996) (explaining that the plurality opinion in the Supreme Court's *Franklin* decision "concluded that 'in general, this court has no jurisdiction of a bill to enjoin the President in the performance of his official duties'" and noting that  while the discussion in *Franklin* was "couched in terms of [the court's] ability to grant injunctive relief against the President, similar considerations regarding a court's power to issue relief against the President himself apply to [the plaintiffs'] request for a declaratory judgment").  Plaintiff's argument that declaratory relief is nonetheless appropriate in this case depends entirely on the fact that the D.C. Circuit once before issued a declaratory judgment against a sitting President, Pl.'s Mem. 15-17 (discussing *Nat'l Treas. Employees Union v. Nixon*, 492 F.2d 587 (D.C. Cir. 1974)), but that decision predates both *Franklin* and *Swan*, and was subsequently questioned by the D.C. Circuit.  Indeed, recent Circuit precedent makes clear that "[a] court—whether via injunctive or declaratory relief—does not sit in judgment of a President's executive decisions."  *Newdow v. Roberts*, 603 F.3d 1002, 1012 (D.C. Cir. 2010).

Plaintiff never substantively confronts these decisions or offers a single D.C. Circuit opinion post-*Swan* that holds otherwise.  Instead, plaintiff recites a handful of recent district court opinions, none of which binds this Court.  For example, plaintiff spills much ink describing Judge Cooper's opinion in *Citizens for Responsibility & Ethics in Wash. (CREW)  v. Trump*, 302 F. Supp. 3d 127 (D.D.C. 2018), but the court there ultimately dismissed the plaintiff's complaint, such that its discourse on whether a plaintiff can obtain declaratory relief against the President is dicta.  *Id.* at 138-40.  Indeed, last month, the D.C. Circuit affirmed the district court's decision and declined

to "entertain [a claim] for declaratory relief" against the President.  Op. at 14, *CREW v. Trump*, No. 18-5150 (D.C. Cir. May 28, 2019).  As for *Blumenthal v. Trump*, 373 F. Supp. 3d 191 (D.D.C. 2019), the government respectfully disagrees with and is likely soon to appeal that decision.

Plaintiff also cites several district court decisions from outside of this Circuit, none of which is binding and all of which the government has appealed.  *See Knight First Amendment Inst. of Columbia Univ. v. Trump*, 302 F. Supp. 3d 541 (S.D.N.Y. 2018), *appeal docketed*, No. 18-1691 (2d Cir. June 5, 2018) (appealing on different, but related grounds); *Dist. of Columbia v. Trump*, 291 F. Supp. 3d 725 (D. Md. 2018), *appeal docketed*, No. 18-2488 (4th Cir. Dec. 17, 2018); *Saget v. Trump*, 345 F. Supp. 3d 287 (E.D.N.Y. 2018), *appeal docketed*, No. 19-1685 (2d Cir. June 7, 2019).

In addition to these cases, plaintiff cites *Boumediene v. Bush*, 553 U.S. 723 (2008), claiming that the Supreme Court's decision there provides an example of a court concluding that it has authority to issue declaratory relief against the President.  But the question whether courts may issue declaratory or injunctive relief against the President was not presented in *Boumediene*, and the Court did not issue any finding on the question.  Although the President was a named Respondent, the true proper respondent to that habeas corpus petition was the petitioner's immediate custodian.

Plaintiff has offered no compelling reason why this Court should ignore the controlling authority holding that injunctive and declaratory relief may not be obtained against the President.  Plaintiff's claim for injunctive and declaratory relief against the President in his official capacity should be dismissed.

### C.  Plaintiff Lacks Standing Because He Has Not Alleged A Cognizable Injury.

Plaintiff has also failed to allege any actual constitutional harm and has thus failed to

establish the standing necessary to bring his claims.  It is manifest that "[a] party cannot have standing on the basis of a legal right he does not claim is violated." *Haitian Refugee Ctr. v. Gracey*, 809 F.2d 794, 800 (D.C. Cir. 1987).  Although plaintiff asserts a First Amendment claim, his complaint is devoid of allegations showing that his speech has been restricted, infringed, or chilled. *Id.*; Defs.' Mem. 13-17.[3]  And to the extent plaintiff bases his claim on a threatened future injury, he has failed to allege that such threatened injury is "certainly impending." *J. Roderick MacArthur Found. v. F.B.I.*, 102 F.3d 600, 606 (D.C. Cir. 1996) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 n.2 (1992)).  Particularly given the novel constitutional claims plaintiff is advancing, his failure to properly allege harm provides an additional, independent basis for dismissal.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (cautioning that standing inquiries should be "especially rigorous when reaching the merits of the dispute would force [the court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional" (internal quotations and citation omitted)).

Plaintiff counters that the defendants' actions and Campaign's attendant arbitration proceeding will, if successful, constitute a "prior restraint," review of which plaintiff seeks on a

---

[3] In fact, plaintiff's conduct belies any such assertion.  Since defendants filed their motion to dismiss, and even in the time since plaintiff filed his opposition to that motion, in which he argued that defendants' actions constitute a "prior restraint" on his expressive activities, plaintiff has continued to promote the sale of his book, post excerpts from the book on Twitter, and speak to the media about information he learned during his federal employment. *See, e.g.*, Tweet of Cliff Sims (May 29, 2019), https://twitter.com/Cliff_Sims/status/1133712785462956033; Tweet of Cliff Sims (April 26, 2019), https://twitter.com/Cliff_Sims/status/1121926494291468290; Anderson Cooper, *Anderson Cooper 360 Degrees: President Trump Defends His Response to Charlottesville After New Criticism From Biden*, CNN (Apr. 26, 2019) (discussing interactions between President Trump and White House staff observed during White House tenure, including examples described in *Team of Vipers*), *available at* http://transcripts.cnn.com/TRANSCRIPTS/1904/26/acd.02.html.  For the reasons explained in defendants' opening memorandum, the court may take judicial notice of these Internet postings in resolving motions to dismiss. *See* Defs.' Mem. 4 n.1.

"preenforcement" basis.  But plaintiff's allegations do not fit these doctrines.  As the Supreme Court has explained, "[t]he term prior restraint is used to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur."  *Alexander v. United States*, 509 U.S. 544, 550 (1993) (internal citation and quotations omitted) (emphasis added by court).  In contrast, plaintiff alleges—indeed, emphasizes—that the Campaign filed the Demand for Arbitration "*only* after *Team of Vipers* had actually come out."  Pl.'s Mem. 20 (emphasis in original); *see also* Compl. ¶¶ 15-21 (detailing that Campaign did not file arbitration claim against plaintiff until two days after plaintiff's book was published, days or weeks after plaintiff began publishing excerpts of the book in media outlets, and weeks after plaintiff's intention to publish the book was formally announced); Compl. ¶ 17 ("Notwithstanding having full knowledge of the impending publication, at no time prior to the public release of "Team of Vipers" on January 29, 2019, did the [defendants] take any action against Mr. Sims or seek to prevent the book's publication.").  The action plaintiff complains of— the filing of an arbitration claim against him—was neither "prior" to the speech he claims is being penalized, nor a "restraint" on speech he had already spoken by the time that action commence. To the extent that legal proceeding has caused plaintiff injury—which it has not, *see* Defs.' Mem. 14-17—that injury would be more appropriately analyzed as a "subsequent punishment[]" for speech already made than a "prior restraint" of future expression.  *Alexander*, 509 U.S. at 553-54; *see also* Compl. ¶ 31 ("The actions of the USGOVT seek to penalize Mr. Sims for exercising his First Amendment right to disclose unclassified information regarding which he learned during his tenure as a federal employee."); Pl.'s Mem. 22 (arguing that defendants' alleged actions were taken "to punish Mr. Sims[] for publishing unclassified information derived from his federal

employment").[4]

As to pre-enforcement challenges, courts allow them for a reason that plainly does not apply here—because the challenged government action places a plaintiff "between a rock and a hard place," where, "absent the availability of preenforcement review, she must either forego possibly lawful activity because of her well-founded fear of prosecution, or . . . subject[] herself to . . . prosecution and punishment." *Navegar, Inc. v. United States*, 103 F.3d 994, 998 (D.C. Cir. 1997) (cited in Pl.'s Mem. 19).  Nowhere does plaintiff allege in his complaint (or even assert in his brief) that he has foregone any expressive activity or taken any other action out of fear of "[t]he threat of monetary and injunctive harm."  This distinguishes plaintiff's complaint from those he cites in which the court found a First Amendment pre-enforcement challenge had been adequately plead.  In *Chamber of Commerce v. FEC*, for example, the plaintiffs were membership organizations that brought a preenforcement challenge to a Federal Election Commission rule limiting the definition of "members" to whom membership organizations may convey political messages and solicitations.  69 F.3d 600, 601 (D.C. Cir. 1995).  The court found that although the

_____

[4] And even if plaintiff's allegations that "the Demand for Arbitration seeks . . . to enjoin Mr. Sims from making 'disparaging statements' or commenting further regarding 'confidential' information derived from his time in the White House," Compl. ¶ 21, might suggest a prior restraint on expression, those vague references fall short of the standard for pleading a "threatened injury," which requires a plaintiff to plead a future "injury [that] is *certainly* impending." *Lujan*, 504 U.S. at 564 n.2; *see also* Defs.' Mem. 13-17.  Although plaintiff asserts that this particular allegation "demonstrates that Mr. Sims has more than sufficiently pled the extent to which the injury is actual and imminent," Pl.'s Mem. 20, he does not explain how this assertion brings him within the *Lujan* standard, or the D.C. Circuit's explication thereon that to establish standing on the basis of a threatened harm, "[i]t is not enough for the [plaintiff] to assert that it might suffer an injury in the future, or even that it is likely to suffer an injury at some unknown future time. Such 'someday' injuries are insufficient." *J. Roderick*, 102 F.3d at 606 (quoting *Lujan*, 504 U.S. at 564).  *See* Defs.' Mem. 16-17.  Plaintiff's attempt to distinguish *J. Roderick* on this point is unavailing because plaintiff has not alleged in his complaint any "basis to conclude" that the arbitration claim is likely to result in an order enjoining him from future speech (presumably because to assert such an allegation would be to concede that plaintiff breached his contract and has no legitimate defense to having done so).

plaintiffs were not "faced with any present danger of an enforcement proceeding" against them, nothing prevented the FEC from bringing one "at any time," such that plaintiffs "felt constrained to alter their prior practice," which "seem[ed] to confer standing." *Id.* at 603.  Those plaintiffs thus established standing by successfully alleging *both* that they faced "a credible threat of prosecution" *and* that "First Amendment rights [were] arguably chilled" by the challenged rule. *Id.* Even if the Campaign's filing an arbitration claim against plaintiff constituted "a credible threat of prosecution"—which it did not—plaintiff lacks standing because he has not alleged that his First Amendment rights have been chilled.  Defs.' Mem. 16; *see also* Pl.'s Mem. 21 (arguing that plaintiff "has not been 'subjectively chilled'" but providing no further detail of any "chill" nor citing to any allegations of chill in the complaint).

Similarly, in *Virginia v. Am. Booksellers Ass'n, Inc.*, the plaintiffs were booksellers who brought a pre-enforcement challenge to a state statute that prohibited the knowing display of certain "materials deemed 'harmful to juveniles.'"  484 U.S. 383, 386 (1988).  There, the plaintiffs alleged that complying with the statute would require them to "take significant and costly compliance measures or risk criminal prosecution." *Id.* at 392.  By contrast, plaintiff here does not allege that he took any action to avoid arbitration nor to avoid any of the alleged threats posed by the filing of the arbitration claim. *See generally* Compl.; Pl's Mem. 18-21.

Plaintiff further contends that two allegations in his complaint "[s]pecifically" "demonstrate[] that Mr Sims has more than sufficiently pled the extent to which the injury is actual and imminent," Pl.'s Mem. 20, but neither of those allegations actually demonstrates imminence. The first, plaintiff's allegation that the Campaign "file[d] the Demand for Arbitration *only* after *Team of Vipers* had actually come out," *id.*, in fact demonstrates that the arbitration claim did not effect a prior restraint on plaintiff's speech.  The second, plaintiff's allegation that the Demand for

Arbitration "seeks monetary damages, as well as to enjoin Mr. Sims' ability to speak publicly in a manner alleged to be in violation [of] the NDA," *id.*, actually shows that the threatened injury plaintiff alleges is wholly speculative, because it depends entirely on the arbitrator, at the conclusion of the arbitration proceeding, ruling in favor of the Campaign and issuing an award of monetary damages as well as an injunction restricting plaintiff's ability to engage in otherwise protected speech.   Neither these allegations—nor any others in his complaint—"[s]pecifically" "demonstrates that Mr Sims has more than sufficiently pled the extent to which the injury is actual and imminent."  *Id.*   Plaintiff's complaint thus fails to demonstrate an injury in fact sufficient for standing purposes and must be dismissed.

### D. Plaintiff's Claim Is Unripe Because An Arbitrator Has Not Yet Determined Whether the Agreement Is Enforceable Or Whether Plaintiff Breached the NDA.

Plaintiff's claim should also be dismissed for the independent reason that it is neither constitutionally nor prudentially ripe.  *See* Defs.' Mem. 17-19.  Plaintiff's argument in response ignores his failure to demonstrate that the filing of an arbitration claim against caused him any First Amendment injury.  Had plaintiff alleged that the filing of the arbitration claim had chilled his speech—and had plaintiff not taken numerous actions in the public record contradicting any allegation of chilled speech—he might be in a position to argue that his claim was already ripe. But instead, his First Amendment claim hinges on allegations of a threatened future injury—*see* Defs.' Mem. 15[5]—which will only occur, if at all, at the conclusion of the arbitration proceeding,

---

[5] All of the threatened harm plaintiff alleges takes the form of possible relief the Campaign might secure against him if its Demand for Arbitration is successful.  Plaintiff alleges that he "could suffer monetary penalties for the publication of 'Team of Vipers', as well as for any future remarks . . . he makes in the future regarding his" federal employment, Compl. ¶ 33, but he will only suffer such penalty if, at the conclusion of the arbitration proceeding, the arbitrator rules in favor of the Trump Campaign and determines such an award is appropriate. And although plaintiff alleges that he "has suffered or may suffer actual adverse and harmful effects, including, but not

and even then, only if the Campaign obtains the relief plaintiff fears.

Plaintiff offers no case in which a court has found ripe a claim based only on allegations of uncertain future injury.  First, in the majority of the cases plaintiff cites, the deciding courts held that the plaintiff's claims were ripe because the plaintiff had alleged both that it already was forced to take compliance actions or risk an enforcement action, and that the agencies' action had chilled its otherwise permissible speech.  *See Chamber of Commerce*, 69 F.3d at 604; *Action for Children's Television v. FCC*, 59 F.3d 1249, 1258 (D.C. Cir. 1995); *Philip Morris USA Inc. v. FDA*, 202 F. Supp. 3d 31, 48 (D.D.C. 2016); *Wash. Legal Found. v. Kessler*, 880 F. Supp. 26, 35-36 (D.D.C. 1995); *cf. Mountain States Tel. & Tel. Co. v. FCC*, 939 F.2d 1035, 1041 (D.C. Cir. 1991) (finding plaintiff's claim was ripe because plaintiff had alleged not simply that it "may" suffer reduced revenue "at some time in the future," but that it was "being forced to forgo revenues now"); *Chem. Waste Mgmt., Inc. v. EPA*, 869 F.2d 1526, 1534 (D.C. Cir. 1989) (finding plaintiff's claim was ripe because plaintiff had demonstrated that "[t]he agency's decision is likely to impose some *immediate* consequences on the petitioners" and even those consequences that "will not be felt immediately, . . . are *certain to occur by a clearly determinable time* in the near (if not immediate) future" (emphasis added)); *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 438-39 (D.C. Cir. 1986) (finding plaintiff's challenge ripe because plaintiff alleged it "continues to suffer economic loss, including reduced sales, erosion of market share and loss of goodwill," and its "only alternative to costly compliance with . . . would be to run the risk of serious civil and criminal

---

limited to, possible civil penalties, a delay in being able to timely comment on information of public interest, and/or lost or jeopardized present or future financial opportunities," *id.* ¶ 34, because plaintiff has not alleged his speech has been or is currently being infringed or chilled and the record makes clear that it has not been, *see* Defs.' Mem. at 4-5—his claim can only rest on his allegations of *future* harm.  But again, that future harm will only transpire if the Trump Campaign prevails in the arbitration and is awarded certain relief against plaintiff.

penalties").  Plaintiff has not done so and in fact more closely resembles the plaintiff in *Cablevision Sys. Corp. v. FCC*, 649 F.3d 695, 713-14 (D.C. Cir. 2011) (cited in Pl.'s Mem. 23), whose as-applied First Amendment challenge was unripe because plaintiff could not establish that the First Amendment harm it feared would ever come to pass.  649 F.3d at 713-14 (citing *Texas v. United States,* 523 U.S. 296, 300 (1998), for the proposition that "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.").

Second, plaintiff has wholly failed to address the constitutional ripeness problems with his claim.  Plaintiff cites *Nat'l Min. Ass'n v. Fowler*, 324 F.3d 752, 757 (D.C. Cir. 2003), in support of his claim, but there the appellate court appeared to consider only prudential ripeness, and did not address whether plaintiff had satisfied constitutional ripeness, *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (constitutional ripeness requires "that an injury in fact be certainly impending"), and in any event the district court found that the plaintiffs had alleged that they suffered "increased costs and delays" which the court found "impose[d] an *immediate,* significant burden on plaintiffs and establish that the matter is ripe for review."  *Nat'l Min. Ass'n v. Slater*, 167 F. Supp. 2d 265, 278 (D.D.C. 2001), *rev'd sub nom. Nat'l Min. Ass'n v. Fowler*, 324 F.3d 752 (D.C. Cir. 2003).  For much the same reasons that plaintiff has failed to demonstrate the injury-in-fact necessary to establish standing, he has also failed to allege facts showing that his claim is constitutionally ripe.  For that reason, too, his complaint should be dismissed.

## III.    THE RELEVANT FACTORS WEIGH STRONGLY AGAINST THE COURT EXERCISING JURISDICTION OVER PLAINTIFF'S DECLARATORY JUDGMENT ACT CLAIM.

Even if plaintiff had not bound himself to an arbitration agreement that requires dismissal

of his complaint, and even if this plaintiff had established the prerequisites for Article III jurisdiction, this Court still has the authority to exercise its discretion to decline to decide this case, as plaintiff concedes.  Pl.'s Mem. 24-25 (citing *Fiberlight, LLC v. Amtrak*, 81 F. Supp. 3d 93, 113-14 (D.D.C. 2015)).  Here, just as in *Fiberlight*—a decision that plaintiff makes no effort to distinguish—the Court should do so.

Plaintiff asserts that two of the factors identified by the D.C. Circuit as "among the 'relevant' considerations in deciding whether to withhold jurisdiction over a claim brought under the [DJA]," *FiberLight*, 81 F. Supp. 3d at 114, weigh in favor of exercising jurisdiction here: (1) the availability of other remedies (factor (2)), and (2) the public importance of the question to be decided (factor (8)).  *See* Pl.'s Mem. 26.[6]  *Hanes Corp. v. Millard,* 531 F.2d 585, 591 n.4 (D.C. Cir. 1976) (citing 10 Wright & Miller, Federal Practice and Procedure § 2759 (1973)).  But neither of these factors actually weighs in plaintiff's favor.  As to the availability of other remedies, plaintiff has not offered any reason that he cannot present his constitutional argument as a defense in the arbitration—the forum in which he contractually agreed to resolve these issues.  Moreover, the threatened harms plaintiff claims he fears—monetary penalties and an injunction against future speech—would only come to pass if plaintiff is unsuccessful in the arbitration.  It is unknown at this point what will happen in that proceeding; should plaintiff prevail there, it would obviate the need for a declaratory judgment action in this Court.  And the only case plaintiff cites on this point, *Comm. on the Judiciary, U.S. House of Representatives v. Miers*, 558 F. Supp. 2d 53 (D.D.C.

---

[6] Plaintiff claims that a third factor weighs in his favor—that "[t]he present case poses a predominantly legal question that requires little in the way of the record being further fleshed out," Pl.'s Mem. 26—but this factor is not among those the D.C. Circuit has listed as "relevant to the propriety of granting a declaratory judgment," *Hanes Corp.*, 531 F.2d at 591 n.4 (citing 10 Wright & Miller, Federal Practice and Procedure § 2759 (1973)), and for this reason, it cannot be germane, let alone dispositive, to the Court's analysis on this issue.

2008), is readily distinguishable on the simple basis, among others, that it did not involve a parallel legal proceeding with the potential to make federal court litigation entirely unnecessary.

As to the public importance of the question to be decided, plaintiff simply ignores that the existence of an important question of law generally weighs *against* exercising jurisdiction, as courts are generally admonished to avoid unnecessarily deciding major constitutional issues.  *See* 10B Wright & Miller, Federal Practice and Procedure § 2759 (4th ed. 2013) (noting that "courts particularly are reluctant to resolve important questions of public law in a declaratory action"); *FiberLight*, 81 F. Supp. 3d at 116 (finding fact that allegations "raise . . . significant questions of law" with far-reaching implications weighs against the exercise of jurisdiction under the Declaratory Judgment Act).  Plaintiff does not explain why the presence of this factor should weigh in favor of the exercise of jurisdiction here.

Finally, Plaintiff does not dispute that several other factors identified by defendants weigh against the exercise of jurisdiction over his Declaratory Judgment Act claim.  *See* Defs.' Mem. 20-22 (citing factors (4) and (5), and the fact that plaintiff appears to be seeking to establish an anticipatory defense, in addition to factors (2) and (8) described *supra*).  For the reasons explained here and in defendants' opening memorandum, this Court should exercise its discretion to decline to decide this case and, instead, dismiss plaintiff's complaint.

## CONCLUSION

For the foregoing reasons and for the reasons provided in defendants' opening brief, defendants respectfully request that the Court dismiss the complaint with prejudice.

Dated:  June 28, 2019                              Respectfully submitted,

                                                   JOSEPH H. HUNT
                                                   Assistant Attorney General

JAMES M. BURNHAM
Deputy Assistant Attorney General

CHRISTOPHER R. HALL
Assistant Director
Civil Division, Federal Programs Branch

/s/ Julie Straus Harris
JULIE STRAUS HARRIS (DC Bar # 1021928)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Room 11514
Washington, D.C. 20005
Tel: (202) 353-7633
Fax: (202) 616-8470
E-mail: julie.strausharris@usdoj.gov

*Counsel for Defendants*